# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John. J. Koresko, V and PennMont Benefit Services, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>Jeff Bleiweis, Raymond Ankner, CJA and Associates, Inc., and The Travelers Life and Annuity Company<br><br>Defendants. | Civil Action No. 04-CV-769 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE TRAVELERS LIFE AND ANNUITY COMPANY'S MOTION TO DISMISS COUNT III AND PART OF COUNT V OF PLAINTIFFS' COMPLAINT**

Plaintiffs, John J. Koresko, V ("Koresko")and PennMont Benefit Services, Inc., ("PennMont") respectfully submit this Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendant The Travelers Life and Annuity Company ("Travelers") to Count III and Part of Count V of the Complaint.

## I.  PRELIMINARY STATEMENT

This is an action for defamation, misappropriation of trade secrets, commercial disparagement, intentional interference with contract, interference with existing business relationship, interference with prospective business relationship and civil conspiracy.  This is <u>not</u> a breach of contract action.

Travelers approached John Koresko about one of his inventions, pretended that it wanted to learn more about that invention because it wanted to do business with Koresko, used false pretenses to obtain Koresko's trade secrets and confidential proprietary information and then gave that information to one of Koresko's direct competitors.  Travelers knew that the information that

Koresko gave it was confidential and that it only received that information because it did not voice any objection to keeping that information confidential.

Travelers has been caught red-handed. They have admitted to using Koresko's and PennMont's trade secrets. They have also been caught giving Koresko and PennMont's trade secrets, proprietary information and intellectual property to one of Koresko's and PennMont's competitors. Now Travelers is trying to get out of the predicament in which it finds itself by arguing that really, the only little thing that it did wrong, was to break its promise not to use the information that Koresko gave it in any way other than in a business relationship with Koresko, and so this action is really just for breach of contract. Travelers is incorrect.

The essence of the complaint is the wrong ascribed to Travelers in obtaining confidential proprietary business information and intellectual property from Plaintiffs and then giving that information to one of Plaintiffs' competitors. The gist of this action is intentional tort consisting of misappropriation of confidential business information, use of trade secrets, and use of an invention with a patent-pending, all for Travelers' own benefit. Because the gist of this action sounds in tort and because Koresko and PennMont would have a cause of action against Travelers even without any agreement between the parties, the gist of the action doctrine does not bar the claims against Travelers and Travelers' motion to dismiss should be denied.

## II. COUNTER STATEMENT OF FACTS

### A. The Parties

Plaintiff Koresko is the General Counsel to Plaintiff PennMont Benefit Services, Inc., a certified public accountant licensed to practice in Pennsylvania, a nationally recognized author and speaker on the topic of the taxation of employee benefits, and an inventor and holder of certain intellectual property, copyrights, and patents pending regarding employee benefit plans. (Compl. ¶ 4).

Plaintiff PennMont is a Pennsylvania corporation, engaged in the business of national marketing, design, sales and administration of tax-advantaged employee benefit and pension programs for financial professionals and their clients. (Compl. ¶ 5).

Defendant CJA ASSOCIATES, INC., ("CJA") is an Illinois corporation actively doing business in the Commonwealth of Pennsylvania engaged in the business of national actuarial consulting and marketing of insurance products and pension programs for financial professionals and their clients, and is the employer of Bleiweis. (Compl. ¶ 7). CJA has solicited business, including 412(i) defined benefit programs using variable insurance contracts, in Montgomery County. CJA has directed mailings into Montgomery County. (Compl. ¶ 8).

Defendant JEFFREY BLEIWEIS ("Bleiweis") is in individual residing in the State of Illinois who serves as Senior Vice President and General Counsel of Defendant CJA, and whose article entitled "412(i) Defined Benefit Fully Insured Plans" ("the article") was published and distributed to its members by SFSP in its June 2003 issue of "Business and Compensation Planning". (Compl. ¶ 6).

Defendant Travelers marketed and sold life insurance products, including, without limitation, variable universal life insurance policies, through CJA, Ankner and Bleiweis. Travelers is licensed in Pennsylvania. (Compl. ¶ 9).

**B.** **The Invention**

Koresko is the inventor of a patent-pending pension program which uses variable insurance contracts to fund a defined benefit program [Variable 412(i) TM (patent pending)] ("the invention"). The invention is to be marketed and distributed exclusively by PennMont. The use of variable insurance contracts in a 412(i) defined benefit program is revolutionary in the insurance industry and has been projected to bring large revenues to the vendor who presents it, as it permits much larger deductions to participating employers; accelerated funding of a guaranteed pension payout; and the purchase of insurance contracts on a tax advantaged basis. As exclusive vendor of

the Variable 412(i) defined benefit program, PennMont stands to reap substantial financial gains from marketing the invention. (Compl. ¶¶ 11 - 14).

CJA is a competitor of PennMont and has been named as a Defendant by Koresko and PennMont in a separate lawsuit in this Court for violation of Koresko's patent pending, that suit being 02 - CV - 014161. That lawsuit was brought by Koresko and PennMont to defend Koresko's trade secrets and invention when it was learned that CJA was marketing variable insurance contracts for use in a IRC § 412(i) defined benefit program. (Compl. ¶¶ 15-16). Thus, thwarted by its inability to compete with PennMont, CJA and Bleiweis engaged in a smear campaign intended to disparage the contractual relations, business interests and professional reputation of Plaintiffs. (Compl. ¶ 23). Bleiweis has personal knowledge of Koresko's patent pending, its contents, its potentially explosive economic rewards and the lawsuit against CJA stemming from it. (Compl. ¶ 20).

   C. <u>The Problem</u>

Travelers and other Defendants used Koresko's and PennMont's invention, materials and concept and marketed them as their own.

Travelers approached Plaintiffs under the guise of partnering with PennMont to market and sell variable insurance and annuity products through a defined benefit program under § 412(i) of the Internal Revenue Code, that Koresko developed. What Koresko developed – the use of variable insurance and/or annuity contracts in a 412 (i) defined benefit program – is revolutionary in the insurance industry and has been projected to bring large revenues to the vendor who presents it. (Compl. ¶ 13). The invention is called "Variable 412(i)." PennMont was the exclusive vendor of that benefit program and Koresko and PennMont stood to reap substantial financial gains from marketing that invention. (Compl. ¶ 15). Koresko and PennMont took all reasonable steps to protect the invention and a patent is currently pending.

Travelers sought Koresko and PennMont's § 412(i) plan business, the invention and the use of Koresko's confidential materials and trade secrets. (Compl. ¶ 17).

In October 2001, Koresko had a meeting with Travelers' President Warren May, Travelers' Marketing Attorney Jeff Coppage, and Travelers' General Agent, Ron Miles. (Compl. ¶ 18). At that meeting, Koresko discussed confidential matters, including trade secrets and the patent pending regarding his invention. (Compl. ¶ 19). Travelers was well aware that the information that Koresko disclosed at that presentation was confidential and that Travelers was not permitted to use that information for its own benefit to the exclusion of Koresko and/or PennMont. (Compl. ¶¶ 20 – 27). In September 2002, Mark Teitlebaum, Vice President for Advanced Marketing, attended a seminar given by Koresko. At that time, Koresko gave a presentation concerning issues relating to his soon to be patented variable 412(i) program. (Compl. ¶¶ 29 – 31). Mr. Teitlebaum was shown the confidentiality notice that was attached as Exhibit "1" to the Complaint and did not object to that notice; he stayed for the entire presentation and was aware that the information he was receiving was confidential. (Compl. ¶¶ 29 – 31).

Prior to September 2002, Travelers decided to do 412(i) business with CJA. Travelers did not disclose that fact to Koresko or PennMont. (Compl. ¶ 34). Naturally, had Koresko been aware that Travelers was already working with one of its competitors, Koresko would never have extended an invitation to the September 2002 presentation and would not have given Travelers and Teitlebaum access to Koresko's and PennMont's intellectual property. (Compl. ¶ 37). At that September meeting, Travelers obtained confidential information from Koresko and PennMont and later used that information in their dealings with CJA, one of PennMont's competitors.

On November 25, 2002, CJA presented and Travelers sponsored a national teleconference for insurance agents and other insurance professionals which was advertised and broadcast into Pennsylvania generally, including Montgomery County and other parts of the Eastern District. During the presentation Travelers publicly endorsed the use of variable annuities in a 412(i)

arrangement. (Compl. ¶ 38). In that call, Travelers and Teitlebaum specifically and knowingly misappropriated Koresko's intellectual property, to wit: Method 1, the allocation method set forth in Koresko's patent application. (Compl. ¶ 39). During that telephone call and during other calls and communications, Travelers and Teitlebaum disparaged Koresko, PennMont and the invention. (Compl. ¶ 40). In the November 25, 2002 call and other communications, Travelers and CJA have disclosed confidential materials and trade secrets that Travelers' personnel have gained through their meetings with Koresko and PennMont. (Compl. ¶ 41).

  D.  **The Conspiracy and Smear Campaign**

Travelers and CJA conspired to violate Koresko's and PennMont's rights. In particular, Travelers used information that it received from PennMont in a joint venture with CJA, who is a competitor with PennMont. Together, CJA and Travelers marketed variable annuity contracts for use in a 412(i) defined benefit program. (Compl. ¶ 53). In addition, CJA has solicited and marketed the use of variable annuity contracts for use in a 412 (i) defined benefit program.

As if Traveler's and CJA's use of Koresko and PennMont's invention were not enough, Defendants engaged in a smear campaign intended to disparage the contractual relations, business interests and professional reputation of Koresko and PennMont. Bleiweis, VP and General Counsel of CJA, deliberately made material misrepresentations of fact and law regarding Plaintiffs and the invention, causing harm to Plaintiffs as individuals and in the marketplace. (Compl. ¶ 70). Moreover, Defendants acted in concert to conspire to interfere and damage Plaintiffs' prospective business relationships by deliberately publishing false and malicious statements regarding the invention and Plaintiffs' ethical posture as a result of marketing said invention. (Compl. ¶ 71).

The effects of that smear campaign are readily evident in the drastic decrease in enrollment and interest in PennMont's Variable 412(i) plan and the corresponding increase in Traveler's 412(i) business. Prior to interference by Bleiweis, Ankner and Travelers, PennMont had in excess of four hundred (400) proposals for Variable 412(i) pending for consideration by clients

and their advisors. (Compl. ¶ 63). In addition, American General Life Insurance Company ("AG") offered Plaintiffs licensing fees of $1.5 million for Variable 412(i). (Compl. ¶ 64). Now, as a result of the interference of Bleiweis, Ankner, CJA and Travelers, AG is not moving forward with its proposal to license and market PennMont's Variable 412(i). Compounding the damage, several advisors withdrew their PennMont proposals from client consideration and upon information and belief placed that business with Travelers. (Compl. ¶ 65).

Defendants were well aware that their actions would injure Plaintiffs' business and its reputation in Pennsylvania and their actions did, in fact, cause significant harm to Plaintiffs' individual and business reputations in Pennsylvania and elsewhere.

## III. ARGUMENT

### A. Standard of Review

It is well established under federal law that a "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). When determining the sufficiency of the plaintiff's claims, the court "must take all of the well pleaded allegations of the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any circumstances, the plaintiff might be entitled to any relief." Bethel v. Jendoco Contr. Corp., 570 F.2d 1168, 1170 (3d Cir. 1978). Courts have an obligation in matters before them to "view the complaint as a whole and to base ruling not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000), cert. denied, 532 U.S. 1038 (2001).

Here, taking the allegations of the complaint as true and construing the complaint in the light most favorable to Plaintiffs mandates that the motion to dismiss be denied.

B. **The Gist of the Action Doctrine Does Not Bar Plaintiffs' Claims**

1. **Plaintiffs are not trying to recover in a tort action what is really nothing more than a breach of contract.**

The "gist of the action" doctrine prevents a contracting party from pursuing a tort claim against the other party where the essential nature of the claim is contractual. Etoll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002). In Redevelopment Authority of Cambria County v. International Insurance Co., 685 A.2d 581, 590 (Pa. Super. Ct. 1996), alloc. denied, 695 A.2d 787 (Pa. 1997), the leading case setting forth the rule for deciphering the true character of a claim, the Pennsylvania Supreme Court emphasized:

> The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus.

Redevelopment Auth. of Cambria County, 685 A.2d at 590.

If the tort claim "essentially duplicates a breach of contract claim," it is barred under the gist of the action doctrine. Polymer Dynamics, Inc. v. Bayer Corp., No. 99-4040, 2000 WL 1146622, at *6 (E.D. Pa. Aug. 14, 2000). Similarly, if the duty arose solely from the parties' agreement, then the plaintiff cannot assert a tort claim and is limited to contractual remedies. If, however, the plaintiff alleges that the defendant breached a socially-imposed duty to which the contract is merely collateral, then the plaintiff can proceed on a tort theory of liability. Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 663 A.2d 753, 757 (Pa. Super. Ct. 1995); Greater Philadelphia Health Servs. II Corp. v. Complete Care Servs., L.P., No. 081790, 2000 WL 33711052, at *1 (Pa. Ct. Com. Pl. Nov. 20, 2000).

In this case, the claim against Travelers for misappropriation is not duplicative of a breach of contract claim. As such, it is not barred by the gist of the action doctrine.

2. **The essence of the Complaint is the wrong ascribed to Travelers' in obtaining and then misappropriating confidential and proprietary information from Plaintiffs.**

In this case, Koresko and PennMont's claims against Travelers' do not duplicate a breach of contract claim. In fact, there is no separate claim for breach of contract in the Complaint. Moreover, Travelers' duty not to use Koresko's invention and proprietary information does not arise solely from the parties' agreement. The essence of the Complaint is the wrong ascribed to Travelers. Travelers' deception in obtaining Koresko's trade secrets under false pretenses, its willful disregard for the patent-pending on Koresko's invention, and disclosing Koresko's trade secrets to one of Koresko's competitors, are the improper conduct which is the gist of the action to which any agreement is merely collateral, As such, the tort claims are not barred by the gist of the action doctrine.

3. **Koresko's and PennMont's claim for misappropriation of trade secrets, is not barred by the gist of the action because any agreement between the parties is merely collateral to Travelers' wrongful conduct.**

The gist of the Complaint is that Travelers mislead Koresko into disclosing his company's trade secrets and his own invention so that Travelers could use that information for its own benefit, Travelers did use that information and dissemination of that information to Plaintiffs' competitors. That Travelers agreed to the Confidentiality Notice shown in PennMont's slide presentation, is merely collateral or incidental to the conduct at issue. As such, the gist of the action sounds in tort.

To determine whether the gist of the action lies in contract or in tort, courts begin by examining the agreement itself and the facts alleged in the complaint that are most pertinent to the tort claim to determine whether the gist of the action sounds in contract or in tort. <u>Owen J. Roberts School District v. HTE, Inc.</u>, No. Civ. A. 02-7830, 2003 WL 735098 ( E.D. Pa. Feb. 28, 2003). In <u>Owen J. Roberts School District</u>, plaintiff school district contracted with HTE to provide computer software. HTE's contractual duties, including those which were at issue in that case, were set forth

in several addenda to the contract. One of those addenda sets forth in detail HTE's obligation to modify and improve certain features of the programs; those contractual terms were recited as responses to twenty-one questions and criticisms that the school district posed during the negotiation process. Id. at *1. HTE did not modify and improve its programs as it was required to do and the school district sued it for breach of contract and fraudulent inducement. The basis for the breach of contract claim was that HTE failed to modify and improve its programs as set forth in the contract. The basis for the fraudulent inducement claim was that HTE falsely represented to the school district that it could and would modify its programs when it knew full well that it was unable to do so.

The court reviewed the complaint and concluded that since the duty that the school district alleged was breached was set forth in the contract, that the school district could not sue for both breach of contract and fraud. The school district's breach of contract claim related to HTE's failure to modify and improve its programs and the fraud claim related to HTE's promise to modify and improve its programs. The court concluded that since both causes of action related to terms of the contract, that only the breach of contract claim could stand.

Owen J. Roberts School District is distinguishable from the case at issue. Here, Plaintiffs are not asserting a separate breach of contract claim. On the contrary, Plaintiffs are only asserting a tort claim arising from Travelers' misappropriation of trade secrets. In addition, Plaintiffs and Travelers did not negotiate and enter into a detailed and comprehensive contract which set forth each party's obligations. On the contrary, the only agreement that is alleged to have been made was Travelers' silent assent to the Confidentiality Notice shown during PennMont's slide presentation. That notice contains the following statement:

> Much of the following information is proprietary and confidential intellectual property of John J. Koresko, V. ["Koresko"]. It is disclosed on the condition that the recipient, by viewing this information, agrees not to use this information in any way other than in a business relationship with Koresko, his affiliates, successors or assigns on terms agreeable to Koresko.

(Compl. Ex. "A"). It is not simply Travelers' silent assent to the confidentiality notice and then subsequent failure to adhere to its terms that forms the basis for Plaintiffs' cause of action against Travelers. On the contrary, it is Travelers' use of the trade secrets, confidential intellectual property and proprietary information which is the gist of this cause of action. That Travelers implicitly agreed to keep the information confidential is merely incidental.

Travelers relies on <u>Bohler-Uddeholm v. Ellwood Group, Inc.</u> in support of its contention that the confidentiality notice prevents Plaintiffs from asserting any cause of action other than breach of contract. 247 F.3d 79 (3d Cir. 2001), <u>cert</u>. <u>denied</u>, 534 U.S. 1162 (2002). Travelers' reliance on <u>Bohler-Uddeholm</u> is misplaced and in fact, that case supports Plaintiffs' position that it can bring a claim for misappropriation of trade secrets. The parties in <u>Bohler-Uddeholm</u> were joint venturers. One sued the other alleging breach of contract, breach of fiduciary duty, misappropriation of trade secrets and civil conspiracy. <u>Id.</u> at 86. The joint venture involved defendant selling goods provided to it by plaintiff. There was a dispute as to whether the defendant was properly accounting for his sales and whether he was entitled to reimbursement for overhead according to the terms of the joint venture agreement. Plaintiff alleged that defendant was not entitled to some of the reimbursement that it claimed, filed suit and alleged that defendant breached both the joint venture agreement and also breached its fiduciary duty by, in part, claiming reimbursements that were not due. Defendant filed a motion to dismiss asserting that the breach of fiduciary duty claim was barred since the gist of the action was really nothing more than a breach of the joint venture agreement.

According to the defendant, the parties "exhaustively negotiated" an agreement that "completely defined the parties' relationship and obligations." <u>Id.</u> at 104. As such, plaintiff's alleged losses arose only from a breach of that agreement. <u>Id.</u> Plaintiff on the other hand, claimed that defendant's actions "caused losses that went beyond the scope of the Agreement, thus giving rise to a cause of action separate from the breach of contract claim." <u>Id.</u>

The court agreed with plaintiff and held that plaintiff's claim for breach of fiduciary duty met the "gist of the action" test since the tort wrong ascribed to defendant was the gist of the fiduciary duty action while the agreement was collateral. Id. at 105. The court concluded that because of the business relationship between plaintiff and defendant which created a fiduciary relationship between the parties, that defendant had duties to plaintiff that went well beyond the particular obligations contained in the agreement itself. Id. at 105. Even though the parties negotiated a detailed agreement outlining the parties' duties and even though defendant's actions were a clear breach of one of its contractual duties, since those actions were also a breach of its fiduciary duty to plaintiff, plaintiff could bring two causes of action – one in contract and another in tort – for defendant's improper conduct. Id.

Likewise in the case at issue, Travelers' actions, while contrary to the confidentiality notice to which it assented, went far beyond any "term" of that notice. Travelers not only used the confidential information that it obtained from Plaintiffs for something other than in a business relationship with Koresko, but Travelers gave that information to one of Koresko's competitors, and used that information for its own benefit. As was the case in Bohler-Uddelholm, the "confidentiality notice" to which Travelers assented in order to receive Plaintiffs' proprietary information, is collateral to what Travelers actually did with the trade secrets and intellectual property that it obtained from Plaintiffs. As such, the misappropriation of trade secrets count passes the gist of the action test.

Travelers also relies on Bohler-Uddeholm in support of its contention that because of the confidentiality notice, Plaintiffs are limited to suing Travelers for breach of that confidentiality notice and may not bring a cause of action for misappropriation of trade secrets. While on its face, Bohler-Uddeholm may appear to support that contention, upon closer investigation, the differences between that case and the case at issue compel a different result. In Bolher-Uddeholm, the parties entered into an agreement which "was exhaustively negotiated and completely defined the parties'

relationship and obligations." Id. at 104.  Plaintiff admitted that defendant was "'contractually prohibited from doing' the actions that plaintiff contends form the basis of its misappropriation claim." Id. at 106.  Since plaintiff acknowledged that the parties entered into a contract that prohibited defendant from doing exactly what defendant did with the proprietary information, plaintiff's claim was really just a breach of contract claim since the contract defined the parties' relationship.  Id. at 106.

In contrast, in the case at issue, Plaintiffs and Travelers did not "exhaustively negotiate [a contract] that completely defined the parties' relationship and obligations."  On the contrary, Plaintiffs showed Travelers a slide entitled "Confidentiality Notice" that Travelers is now trying to portray as a detailed and exhaustively negotiated contract in a vain attempt to thwart Plaintiffs' ability to bring a tort action against Travelers.  Unlike in Bohler-Uddeholm, the agreement was not exhaustively negotiated, it did not outline precisely what Travelers could and could not do with the information that it received.  This PowerPoint slide is nothing like the extensive agreement negotiated in Bohler-Uddeholm or the contract in Owen J. Roberts Sch. Dist.  Those agreements were exhaustively negotiated over months and in the case of Owen J. Roberts Sch. Dist, years, in writing, signed by the parties.  The plaintiffs in each of those cases alleged that defendants did something that was expressly and specifically prohibited by the terms of the contract.  In the case of Owen J. Roberts Sch. Dist, plaintiff was worried that defendant would do exactly what he did do – provide computer software that was not compatible with the rest of the system – and made that an express term of the contract.  When defendant provided incompatible software, plaintiff could not recover both in tort and in contract for what was a breach of an express term of the contract.  Here, Plaintiffs showed Travelers a slide that advised Travelers that the information it was about to receive was confidential and proprietary and would only be shown if Travelers agreed not to use the information in any way other than in a business relationship with Travelers.

This case simply does not sound in contract but sounds in tort. For these reasons, the gist of the action doctrine does not bar the claims stated in Counts III and Count V.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully submitted that Travelers' motion to dismiss should be denied.

Respectfully submitted,

DATED: April 15, 2004

_____
Virginia I. Miller, Esq.
Pamela D. Hans, Esq.

ANDERSON KILL & OLICK, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 568-4202

Attorneys for Plaintiffs
John J. Koresko, V and PennMont Benefit Services, Inc.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John. J. Koresko, V and PennMont Benefit Services, Inc.<br><br>Plaintiffs,<br><br>v.<br><br>Jeff Bleiweis, Raymond Ankner, CJA and Associates, Inc., and The Travelers Life and Annuity Company<br><br>Defendants. | Civil Action No. 04-CV-769 |

## ORDER

AND NOW, this              day of                              , 2004, upon consideration of the Motion to Dismiss filed by Defendant The Travelers Life and Annuity Company to Count III and Part of Count V of the Complaint, and Plaintiffs' response thereto, and after notice and a hearing, it is hereby Ordered that:

The Motion is **DENIED**.

BY THE COURT

_____
J. Dalzell

# CERTIFICATE OF SERVICE

I certify that at my direction a true and correct copy of the foregoing Brief in Opposition to the Defendants' Motion to Dismiss and proposed order was mailed by first class mail to:

**DIANE SIEGEL DANOFF**
**DECHERT LLP**
**1717 Arch Street**
**Philadelphia ,PA  190103**
**ATTORNEY FOR THE TRAVELERS LIIFE AND ANNUITY COMPANY**

**CRAIG R. TRACTENBERG**
**NIXON PEABODY LLP**
**1818 Market Street, 11th Floor**
**Philadelphia, PA  19103**
**ATTORNEY FOR JEFF BLEIWEIS; RAYMOND ANKNER; CJA ASSOCIATES, INC.**


DATED:  April 15, 2004        By:
_____
Virginia I. Miller (I.D. No. 85361)

Anderson Kill & Olick, P.C.
1600 Market Street
Suite 2500
Philadelphia, PA  19103
Telephone:  215-568-4202

Attorneys for Plaintiff
PENN-MONT BENEFIT SERVICES, INC.