# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN J. KORESKO, V, et al. | : | CIVIL ACTION |
| v. | : | NO. 04-CV-769 |
| JEFF BLEIWEIS, et al. | : | |

## MEMORANDUM AND ORDER

**Kauffman, J.**                                                                      December 30, 2004

Plaintiffs John Koresko, V ("Koresko") and Pennmont Benefit Services, Inc. ("PennMont") (collectively "Plaintiffs") bring this action for Interference with Present and Prospective Business and Contractual Relationships (Count One), Misappropriation of Trade Secrets (Count Two), Commercial Disparagement (Count Four), and Civil Conspiracy (Count Five) against Defendants Jeff Bleiweis ("Bleiweis"), Raymond Ankner ("Ankner"), CJA and Associates ("CJA"), and the Travelers Life and Annuity Company ("Travelers").[1] Now before the Court is Travelers' motion to dismiss Count Two and part of Count Five pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Travelers' motion will be denied.

## I. BACKGROUND

Accepting the allegations in the Complaint as true, the facts pertinent to this motion are as follows. PennMont is a Pennsylvania corporation engaged in the business of actuarial consulting and the marketing of insurance products and pension programs for financial professionals and their clients. Plaintiffs' Amended Complaint ("Complaint") at ¶ 5. Koresko is PennMont's General Counsel. Id. at ¶ 4. CJA offers many of the same services and is one of PennMont's

---

[1] Plaintiffs' First Amended Complaint omits a Count Three.

chief competitors. Id. at ¶ 7. Bleiweis is CJA's Senior Vice President and General Counsel. Id. at 6. Travelers is an insurance company, which at various times has marketed and sold life insurance products through Defendants CJA and Bleiweis.

Between March, 2000 and the present, Koresko devised an innovative patent-pending pension program that uses variable insurance contracts to fund a defined benefit program (the "invention"). Id. at ¶ 9. The invention involves structuring benefit programs in a novel manner that allows larger tax deductions to participating employers, accelerated funding of a guaranteed pension payout, and the purchase of insurance on a tax advantaged basis. Id. at ¶ 12. By agreement, PennMont was to serve as the exclusive vendor for the invention – a position from which the company expected a significant amount of profit. Id. at ¶ 14.

In October 2001, Koresko met with a number of Travelers executives to discuss the possibility of PennMont and Travelers forming a partnership to market and sell variable insurance and annuity products (the "October meeting"). Plaintiffs' Memorandum of Law in Response to Defendants' Motion to Dismiss ("Plaintiffs' Memo") at 3. Koresko planned to reveal certain information about the invention at the October meeting, and was concerned that its confidentiality might be compromised. Accordingly, he sent Travelers a confidentiality agreement, and requested that it be executed prior to the October meeting. Complaint at ¶ 23. Travelers represented to Koresko that the confidentiality agreement would be executed "after they get out of legal," although that might not be until after the meeting. Id. at ¶ 24.

Koresko remained concerned about protecting PennMont's intellectual property interests in the invention, and so decided to secure a confidentiality promise from Travelers on the day of the October meeting. Thus, the meeting began with Koresko giving a Powerpoint presentation,

2

in which the second slide was a confidentiality notice. Id. at ¶ 20. After showing the confidentiality notice, Koresko stopped to ask if everyone had read it, and if there were any objections. Id. Having assured himself that PennMont would be protected by the confidentiality notice, Koresko proceeded to describe the invention to Travelers. Id. at ¶ 21.

Travelers employees gained access to information about the invention a second time in September 2002 when Mark Teitlebaum ("Teitlebaum"), Travelers' Vice President for Advanced Marketing, attended a seminar Koresko gave outside of Boston (the "Seminar"). At some point prior to the Seminar, Travelers determined that CJA would be its exclusive partner and thus, had no intention of doing business with PennMont when it sent Teitlebaum to hear Koresko's presentation. At the Seminar, Koresko followed his practice of showing the audience a confidentiality notice. Id. at ¶ 28. Teitlebaum did not object to the confidentiality notice, and remained for the entire seminar. Id. at ¶ 29.

On November 25, 2002, CJA presented and Travelers sponsored a national teleconference for insurance agents and other insurance professionals. Id. at ¶ 37. In that teleconference and in other subsequent communications, despite the confidentially notice, Travelers and CJA disclosed certain confidential information about the invention that Travelers' employees had learned from Koresko. Id. at ¶ 40. Defendants also engaged in an alleged smear campaign designed to interfere with PennMont's marketing of the invention. Id. at ¶¶ 69 - 70.

Travelers has brought this motion to dismiss Plaintiffs' claim under Count Two for misappropriation of the trade secrets and the corresponding part of the conspiracy claim in Count Five.

## II. LEGAL STANDARD

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

**III. ANALYSIS**

Travelers' Motion to Dismiss is based on the "gist of the action doctrine." The gist of the action doctrine requires tort claims that ultimately arise out of a defendant's failure to adhere to the terms of his contract with the plaintiff to be dismissed, thereby preventing a plaintiff from disguising what is fundamentally a contract claim as a tort claim in order to qualify for punitive damages. See Etoll, Inv. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002).

Travelers argues that the gist of the action doctrine applies in this case, because the confidentiality notices Koresko showed the Travelers representatives created a contract governing the parties' relations. At its core, Travelers argues, Plaintiffs' misappropriation of trade secrets claim is an argument that Travelers has not satisfied its confidentiality obligations under that contract. Accordingly, Plaintiffs' misappropriation of trade secrets claim should be barred by the gist of the action doctrine. See Travelers' Memorandum of Law in Support of its Motion to Dismiss ("Travelers' Memo") at 3 - 4.

Thus, the question before the Court is whether the gist of Plaintiffs' claim for

4

misappropriation of trade secrets actually sounds in contract rather than tort. In making such assessments, courts consider the nature and basis of the obligation the defendant is alleged to have violated. Thus, "a claim should be limited to a contract claim when the 'parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts.'" Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d. Cir. 2001) (quoting Bash v. Bell Tel. Co., 601 A.2d 825, 830 (1992).

However, a tort claim may still lie against a defendant even though the conduct on which the tort is based falls within the scope of a contract. That the defendant's conduct is governed by the contract, therefore, is not dispositive; rather, the essential question is whether the defendant's conduct violates some additional duty that is distinct from the obligations the defendant accepted by entering into the contract. See Bohler-Uddeholm, 247 F.3d at 105 ("This duty imposed obligations on [the defendant] that went well beyond the particular obligations contained in the [a]greement itself.")

In this case, the obligations underlying Plaintiffs' claim for misappropriation of trade secrets extend beyond Travelers' failure to adhere to any confidentiality agreement that might have been formed. Plaintiffs also allege that Travelers did not fulfill its obligations to act in good faith: first, Travelers obtained the information about the invention under the false pretense that it was interested in doing business with PennMont when, in fact, it had already decided to work exclusively with CJA; and second, Travelers revealed the information that it knew to be confidential to PennMont's competitor. See Plaintiffs' Memo at 11.

This deceptive conduct may constitute a violation of the parties' confidentiality agreement; but it *also* violates Travelers' duty to deal in good faith, as it is set forth in the tort of

5

misappropriation of trade secrets.  See Restatement (First) of Torts § 757 (stating that liability for misappropriation of trade secrets attaches both to one who gains access to trade secrets through improper means and one whose disclosure of the information constitutes a breach of confidence);  See also O.D. Anderson, Inc. v. Cricks, 815 A.2d 1063, 1072 (Pa. Super. 2003) (adopting § 757 of the Restatement in Pennsylvania).

The duty on which the tort is based is one of good faith and fair dealing.  See Restatement (First) of Torts § 757 cmt. a ("The protection [from misappropriation of trade secrets] is afforded only by a general duty of good faith and liability rests upon a breach of this duty").  Since this is a duty that was "imposed 'as a matter of social policy' rather than 'by mutual consensus,'" the gist of Plaintiffs' misappropriation of trade secrets claim lies in tort rather than contract law. Bohler-Uddelholm, 247 F.3d at 105 (quoting Redevelopment Auth. of Cambria County v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. 1996)).  See also Den-tal-ex, Inc. v. Siemens Capital Corp., 566 A.2d 1214, 1224 ("Pennsylvania cases involving common law causes of action for misappropriation of trade secrets frequently present factual settings including the existence of a confidentiality agreement between the parties"); Restatement (First) of Torts § 757 cmt. j ("But whether or not there is a breach of contract, the rule stated in this Section subjects the actor to liability if his disclosure or use of another's trade secret is a breach of the confidence reposed in him...").[2]

---

[2] Travelers cites Bohler-Uddeholm for the proposition that the gist of the action doctrine always bars a claim for misappropriation of trade secrets when a confidentiality agreement exists between the parties.  See Travelers' Memo at 6.  That, however, is a mischaracterization of the court's holding.  The Bohler-Uddeholm court did find that the confidentiality agreement between the parties barred a misappropriation of trade secrets claim, *but only because* "'the parties' obligations are defined by the terms of the contract, and not by the larger social policies embodied in the law of torts.'"  Bohler-Uddeholm, 247 F.3d at 106.  In this

6

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the gist of the action doctrine does not bar Plaintiffs' misappropriation of trade secrets claim. Accordingly, Travelers' Motion to Dismiss will be denied.

---

case, the parties' obligations were also defined by the duty to deal in good faith, which is rooted in social policy. Thus, <u>Bohler-Uddeholm</u> is distinguishable.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN J. KORESKO, V, et al.** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 04-CV-769 |
| | : | |
| **JEFF BLEIWEIS, et al.** | : | |

## ORDER

**AND NOW**, this 30th day of December, 2004, upon consideration of Traveler's Motion to Dismiss (docket no. 49), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:

S/Bruce W. Kauffman
BRUCE W. KAUFFMAN, J.