# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN J. KORESKO, V, <u>et al.</u>** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 04-CV-769** |
| | : | |
| **JEFF BLEIWEIS, <u>et al.</u>** | : | |

## <u>MEMORANDUM AND ORDER</u>

**Kauffman, J.**    September 27, 2005

Plaintiffs John Koresko, V ("Koresko") and Pennmont Benefit Services, Inc. ("PennMont") (collectively, "Plaintiffs") bring this action for interference with present and prospective business and contractual relationships (Count One), misappropriation of trade secrets (Count Two), commercial disparagement (Count Four), and civil conspiracy (Count Five) against Defendants Jeff Bleiweis ("Bleiweis"), Raymond Ankner ("Ankner"), CJA and Associates ("CJA"), and the Travelers Life and Annuity Company ("Travelers").[1]  Now before the Court is the Motion to Dismiss of Bleiweis, Ankner and CJA (the "CJA Defendants") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  For the reasons that follow, the Motion will be denied.

## I. BACKGROUND

PennMont is a Pennsylvania corporation that markets insurance products and pension programs for financial professionals and their clients.  Plaintiffs' First Amended Complaint ("Complaint") at ¶ 5.  Koresko is PennMont's General Counsel.  <u>Id.</u> at ¶ 4.  CJA is one of

---

[1]    Plaintiffs' First Amended Complaint omits a Count Three.

PennMont's chief competitors. Id. at ¶ 7. Bleiweis is CJA's Senior Vice President and General Counsel. Id. at 6. Travelers is an insurance company, which at various times has marketed and sold life insurance products through Defendants CJA and Bleiweis.

Between March 2000 and the present, Koresko devised an innovative patent-pending pension program that uses variable insurance contracts to fund a defined benefit program (the "invention"). Id. at ¶ 9. The invention involves structuring benefit programs in a novel manner under Section 412(i) of the Internal Revenue Code ("412(i)") that allows larger tax deductions to participating employers, accelerated funding of a guaranteed pension payout, and the purchase of insurance on a tax advantaged basis. Id. at ¶ 12. By agreement, PennMont was to serve as the exclusive vendor for the invention – a position from which the company expected a significant profit. Id. at ¶ 14.

In October 2001, Koresko met with a number of Travelers executives to discuss the possibility of PennMont and Travelers forming a partnership to market and sell variable insurance and annuity products (the "October Meeting"). At the meeting, Koresko gave a presentation in which he described the invention. Before beginning the presentation, however, Koresko confirmed that everyone had read the confidentiality agreement and that no one objected.[2] Id. at ¶¶ 20-26. In September 2002, Koresko again revealed information about the invention, which was expressly protected by a confidentiality agreement. Id. at ¶ 28.

Unbeknownst to PennMont and Koresko, CJA and Travelers agreed to jointly pursue business in the defined benefit plan market – the same market to which Koresko and PennMont

---

[2] Neither the Complaint nor the affidavits Plaintiffs have submitted allege that the October Meeting took place in Pennsylvania.

expected to apply the invention.  Id. at ¶¶ 33-35.  The partnership was formed at some point prior to September 2002.

The gravamen of Plaintiffs' complaint is that Defendants employed unlawful means to divert customers away from PennMont.  The first such act alleged is a national teleconference for insurance agents and other insurance professionals Defendants held on November 25, 2002 (the "teleconference").  Id. at ¶ 37.  In that teleconference, Travelers and CJA disclosed confidential information about the invention that Travelers' employees had learned from Koresko.  Id. at ¶ 40.  Travelers and CJA also used the teleconference to "commercially disparage PennMont and the invention."  Id. at ¶ 37.  Plaintiffs allege that the teleconference was advertised nationally and "broadcast into Pennsylvania generally."  Plaintiffs' Response to Motion to Dismiss ("Response") at 6.

Plaintiffs also allege that CJA has incorporated the information Travelers gathered from its meetings with Koresko into its own products, and that CJA is marketing those products nationally, including in Pennsylvania.  Id. at ¶ 42, 52-53.  As proof of CJA's marketing activity in Pennsylvania, Plaintiffs recount CJA's attempt to sell its defined benefit program to Margaret Lawson ("Lawson"), who resides in Montgomery County, Pennsylvania, and is a "Pennsylvania-licensed life insurance agent."  Aff. of Margaret Carroll-Collemacine (now Lawson), Jun. 4, 2004 ("Lawson Aff. 6/4/2004") at ¶¶ 1-2.  Lawson's affidavit states that she was "surfing the internet when [she] came across CJA and Associates as a provider" of employee benefit and pension programs, "including 412(i) plans."  Aff. of Margaret Lawson, July 22, 2004 ("Lawson Aff. 7/22/2004") at ¶ 3.  She then requested information about the program from CJA.  Id. at ¶ 5.  A representative from CJA, Jennifer Ankner, subsequently contacted Lawson both in writing and

3

on Lawson's cell phone to discuss Lawson's interest in CJA's products. Id. at ¶¶ 7-12. Defendants allege that Lawson was actually employed by Plaintiffs when she contacted CJA through the company's website. Defendants' Reply Brief at 5.

Finally, Plaintiffs allege that Bleiweis published an article (the "article") in a trade publication headquartered in Pennsylvania, which "defamed" Plaintiffs and the invention. Plaintiff's Opposition at 12.

## II. LEGAL STANDARD

When, as in this case, a defendant brings a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff "bears the burden of establishing the court's jurisdiction[.]" Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). To meet that burden, the plaintiff "need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Id.

A federal district court sitting in diversity may exercise jurisdiction over a foreign defendant's person to the extent allowed for by the law of the state in which the district court is located. See Fed. R. Civ. P. 4(e). Personal jurisdiction under state law, in turn, involves two steps. First, the district court must determine that exercising jurisdiction over the defendant would be consistent with the relevant state long-arm statute; the court must then consider whether exercising jurisdiction would be consistent with the requirements of due process. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998). In Pennsylvania, the long-arm statute allows courts to exercise personal jurisdiction to the fullest extent allowed by the Constitution. Accordingly, the Court's analysis focuses solely on federal due process requirements. Applied Tech. Int'l, Ltd. v. Goldstein, 2004 WL 2360388 at * 2 (E.D. Pa. 2004).

4

For personal jurisdiction, the Due Process Clause requires "(1) that the 'defendant have constitutionally sufficient minimum contacts with the forum...and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice.'" Toys "R" Us, Inc. v. Step Two, 318 F.3d 446, 451 (3d Cir. 2003) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). Minimum contacts exist when there is "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws[.]'" Id. (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987)).

A defendant's contacts with the forum state reach the minimum level in one of two ways. When the contacts are "continuous and systematic," the court may exercise "general jurisdiction" over the defendant even if the contacts are unrelated to the plaintiff's cause of action. See Verotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147, 151 n.3 (3d Cir. 1996). Specific jurisdiction, in contrast, exists "only if the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum," Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002), such that the defendant "should reasonably anticipate being haled into court" in that forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

### III. ANALYSIS

Plaintiffs concede that the Court lacks general jurisdiction over Defendants. Plaintiffs' Opposition at 9. Because the specific jurisdiction analysis is, by its nature, claim specific, the Court must examine each of Plaintiffs' claims individually. Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (Specific jurisdiction analysis "is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim

5

asserted by [the plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to the plaintiff's other claims.").

    A.    *Interference with Present and Prospective Business and Contractual Relationships*

Plaintiffs support the assertion of personal jurisdiction over their interference with business relationships claim (the "interference claim") with three contacts:[3] (1) the teleconference Defendants conducted which Plaintiffs claim was directed toward Pennsylvania; (2) CJA's marketing activities in Pennsylvania; (3) Bleiweis' allegedly defamatory article. Accordingly, the question before the Court is whether this alleged conduct is sufficiently related to both the interference claim and Pennsylvania that Defendants "should reasonably anticipate being haled into court" here. World-Wide Volkswagen, 444 U.S. at 297.

The interference claim is based on the theory that Defendants frightened off many of PennMont's potential clients by defaming both PennMont and the invention. The teleconference, which Defendants allegedly used as a forum to criticize the invention, Complaint at ¶ 39, is therefore clearly related to that claim. Less certain, however, is whether the teleconference constitutes a contact with Pennsylvania. The only link Plaintiffs have provided between the teleconference and Pennsylvania is an assertion in their opposition brief that the teleconference

---

    [3]    The Court will consider these contacts as being common to all Defendants, as the Complaint asserts a conspiracy claim and "personal jurisdiction over a non-Pennsylvania defendant may be asserted if 'substantial acts in furtherance of the conspiracy occurred in Pennsylvania and the non-forum co-conspirator was aware of or should have been aware of those acts.'" CDI Int'l, Inc. v. Marck, 2005 WL 146890, at *3 (E.D. Pa. Jan. 21, 2005) (quoting Santana Prods., Inc. v. Bobrick Washroom Equip., 14 F. Supp. 2d 710, 718 (M.D. Pa. 1998)).

was "advertised and broadcast into Pennsylvania generally."

However, this assertion is problematic for two reasons. First, it is not corroborated by any of the affidavits Plaintiffs have provided, and therefore does not satisfy the Plaintiffs' obligation to provide proof in the form of affidavits. Schiller-Pfeiffer, Inc. v. Country Home Prods., Inc., 2004 WL 2755585 at *4 (E.D. Pa. Dec. 1, 2004). Second, Plaintiffs' unsubstantiated allegation that the teleconference was "advertised and broadcast into Pennsylvania generally" is not sufficiently specific. To meet their burden, Plaintiffs must set out the contacts on which they would base specific jurisdiction with "reasonable particularity." Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 542 (3d Cir. 1985); see also 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.6 3d ed. 2005) (stating that a plaintiff must set out specific facts on which jurisdiction may be based). Plaintiffs have not indicated whether there were any Pennsylvania residents participating in the call, or even whether they had advertised the call to Pennsylvania businesses or residents. Id. Accordingly, the Court finds that the teleconference cannot serve as a basis for specific personal jurisdiction.

Plaintiffs contend that CJA's efforts to market in Pennsylvania products that have incorporated elements of the invention is also a contact that supports specific personal jurisdiction with regard to Plaintiffs' Interference claim. As evidence of CJA's marketing activities, Plaintiffs have submitted documents produced by Defendants indicating that CJA has identified Pennsylvania as "one of its key 15 states in the 412(i) arena, the very subject of this lawsuit." See Plaintiffs' Surreply at 5; see also Status Report Fixed Annuity, attached as Exh. C to Miller Aff. 4/7/05.

7

However, CJA's <u>intention</u> to promote its product in Pennsylvania does not in itself constitute a Pennsylvania contact. For CJA's marketing activities to support the Court's exercise of personal jurisdiction, Plaintiffs must present specific evidence that CJA has acted on that intention. <u>Gehling</u>, 773 F.2d at 542. The only specific instance of marketing Plaintiffs have alleged involves CJA's correspondence with Lawson. As noted above, Lawson sent an email to CJA inquiring about its 412(i) products after browsing the company's website. CJA then contacted Lawson in response, both via email and written letter. Defendants allege that Lawson was actually employed by Plaintiffs when she contacted CJA and that her request for information was pretextual. Her real aim, Defendants contend, was to render CJA subject to personal jurisdiction in Pennsylvania. Defendants' Reply Brief at 6. Plaintiffs do not deny that allegation. <u>See</u> <u>Toys "R" Us</u>, 318 F.3d at 454 ("The only documented sales to persons in the United States are the two contacts orchestrated by [the plaintiff]."). Because Plaintiffs have failed to allege or provide evidence of specific instances in which CJA has attempted to market products that incorporate elements of the invention in Pennsylvania, the Court finds that Plaintiffs' allegations as to CJA's marketing do not support personal jurisdiction.

The article Bleiweis published is also related to the interference claim insofar as it discouraged prospective clients from doing business with PennMont. Plaintiffs have failed to make specific allegations as to whether any Pennsylvania businesses or residents read the article or even whether it was published in Pennsylvania.[4] However, Plaintiffs have alleged that the article was printed by the Society of Financial Service Professionals ("SFSP"), which has its headquarters in Pennsylvania. <u>See</u> Plaintiffs' Opposition at 12.

---

[4] Plaintiffs do, however, allege that Lawson read the article.

Defendants' use of a Pennsylvania-based organization to publish their allegedly defamatory article clearly constitutes a contact with Pennsylvania sufficiently related to Plaintiffs' interference claim that it subjects Defendants to the Court's personal jurisdiction. SFSP, as Defendants' publisher, played a substantial role in the allegedly defamatory article's publication. By printing their article in SFSP's publication, Defendants used SFSP's reputation to lend credibility to the claims they were making.[5] In short, Defendants' use of a Pennsylvania publisher played an important causal role in the publication of the allegedly defamatory article. To that extent, Defendants could reasonably have anticipated being "haled into court" in this forum. See Remick, 384 F.3d at 99 (holding that the defendant's contact with the forum state need not be the proximate cause of the plaintiff's injuries to satisfy due process requirements). Accordingly, the Court finds that it may exercise personal jurisdiction over Defendants with respect to the interference claim.

B.   *Commercial Defamation*

The same reasoning applies to Plaintiffs' commercial defamation claim, which also arises out of the allegedly defamatory article. Thus, the Court finds that Defendants are subject to personal jurisdiction with respect to Plaintiffs' commercial defamation claim.

C.   *Civil Conspiracy*

A similar analysis applies to Plaintiffs' civil conspiracy claim. To the extent that the defamatory article was an act in furtherance of the alleged civil conspiracy, that claim "arises out

---

[5] SFSP is a "Pennsylvania society which does business in Pennsylvania and [provides] the financial services industry various services, including national publications, continuing education, consumer referral, research, network and advertising." See Lawson Aff. 6/4/04 at ¶ 12.

9

of" the Pennsylvania contacts Defendants made in the course of securing the article's publication. Accordingly, the Court also has personal jurisdiction over Plaintiffs' civil conspiracy claim.

      D.    *Misappropriation of Trade Secrets*

A contact with the forum can also support the exercise of personal jurisdiction if it is sufficiently related to the claim. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) ("When a controversy is *related to* or "arises out of" a defendant's contacts with the forum, the Court has said that a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction."). In this case, Defendants' alleged defamatory acts and misappropriation of trade secrets were both means to the same end: taking business away from PennMont and bringing it to CJA. Since both were part of a larger coordinated scheme, the defamatory article is related to the alleged misappropriation of trade secrets claim.

The Supreme Court has made clear that the Due Process limits on personal jurisdiction are intended to protect "an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King, 471 U.S. at 471-72 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). This protection is accomplished by insuring that "individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign[.]'" Id. (quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977)).

Here, Defendants purposefully engaged in conduct in Pennsylvania to further their scheme to win business away from PennMont. Their use of a Pennsylvania publisher established a "meaningful" relation between Pennsylvania and the entire scheme, including the claim of

misappropriation of PennMont's trade secrets. That "meaningful relation" gave Defendants "fair warning" that they should have "reasonably anticipate[d] being haled into court" here for the scheme in its entirety.[6]

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss for lack of personal jurisdiction will be denied. An appropriate Order follows.

---

[6] Jurisdiction over the misappropriation of trade secrets claim could also be based upon the doctrine of pendent personal jurisdiction, as all four of Plaintiffs' claims arise out of the same constellation of facts. See Robinson v. Penn Central Co., 484 F.2d 553, 555 (3d Cir. 1973); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2005) (A district court has discretion to exercise personal jurisdiction over a claim when that claim arises out of the same common nucleus of operative fact as does a claim that is within the in personam jurisdiction power of the court.)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN J. KORESKO, V, et al.** | : | **CIVIL ACTION** |
| **v.** | : | **NO. 04-CV-769** |
| **JEFF BLEIWEIS, et al.** | : | |

## ORDER

**AND NOW**, this __27th____ day of September, 2005, upon consideration of CJA Defendants' Motion to Dismiss (docket No. 95) and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED.**

BY THE COURT:

*S/Bruce W. Kauffman*
BRUCE W. KAUFFMAN, J.