IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John J. Koresko, V and<br>PennMont Benefit Services, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Jeff Bleiweis,<br>Raymond Ankner,<br>CJA and Associates, Inc., and<br>MetLife Insurance Company of Connecticut,<br><br>Defendants. | Civil Action No. 04-cv-769 |

**DEFENDANT METLIFE'S MOTION FOR RECONSIDERATION
OF ORDER GRANTING PLAINTIFFS' LOCAL RULE 41(A) APPLICATION**

Defendant MetLife Insurance Company of Connecticut[1] moves the Court to reconsider its Order of November 12, 2008 regarding Plaintiffs' application pursuant to Local Civil Rule 41(a). Reconsideration is warranted because the Court granted the application before receiving MetLife's opposition thereto, including facts of which the Court is not aware and which contradict statements made by Plaintiffs in their application.

MetLife had informed the Court that it intended to oppose the Plaintiffs' application on page 4 of MetLife's Conditional Application Regarding Administrative Dismissal Under Local Civil Rule 41.1(a), filed last week in a related case, no. 05-cv-5862.

---

[1] Subsequent to the filing of this case, the name of plaintiff The Travelers Life and Annuity Company was changed to MetLife Life and Annuity Company of Connecticut, which was subsequently merged into MetLife Insurance Company of Connecticut.

13310494.6

                          Respectfully submitted,

Dated:  November 13, 2008                    __s/ *Robert W. Ashbrook Jr.*__
                                                  Diane Siegel Danoff
                                                  Robert W. Ashbrook, Jr.
                                                  Dechert LLP
                                                  Cira Centre, 2929 Arch Street
                                                  Philadelphia, PA  19104-2808
                                                  telephone 215.994.4000
                                                  facsimile 215.994.2222
                                                  *Attorneys for Defendant MetLife Insurance Company of Connecticut*

13310494.6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John J. Koresko, V and<br>PennMont Benefit Services, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Jeff Bleiweis,<br>Raymond Ankner,<br>CJA and Associates, Inc., and<br>MetLife Insurance Company of Connecticut,<br><br>Defendants. | Civil Action No. 04-cv-769 |

## [PROPOSED] ORDER

**AND NOW**, upon consideration of Defendant MetLife's Motion for Reconsideration of Order Granting Plaintiffs' Local Rule 41(a) Application, it is **ORDERED** that the motion is **GRANTED** and this case is **DISMISSED** with prejudice. Defendants shall submit a bill for costs and attorney fees within 30 days of this Order.

**BY THE COURT:**

Dated: _____                    _____
                                            Bruce W. Kauffman, U.S.D.J.

13310494.6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John J. Koresko, V and<br>PennMont Benefit Services, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Jeff Bleiweis,<br>Raymond Ankner,<br>CJA and Associates, Inc., and<br>MetLife Insurance Company of Connecticut,<br><br>Defendants. | Civil Action No. 04-cv-769 |

### DEFENDANT METLIFE'S OPPOSITION TO PLAINTIFFS' APPLICATION UNDER LOCAL CIVIL RULE 41.1(a) AND BRIEF SUPPORTING ITS MOTION TO RECONSIDER[2]

Defendant MetLife Insurance Company of Connecticut ("MetLife") opposes the application of plaintiffs John J. Koresko, V and PennMont Benefit Services, Inc. (together, "Koresko") under Local Civil Rule 41.1(a). The rule requires that there be "good cause shown" by Koresko in order to avoid dismissal. Because Koresko has not shown good cause, his application to avoid dismissal should be denied and this case should be dismissed.

Koresko's claim of good cause is that the plaintiffs "have not been actively represented by counsel in this matter since March 30, 2007, and have only retained the

---

[2] The Court issued its order granting Plaintiffs' application within one week of its filing, before Defendants had a chance to timely respond. MetLife had informed the Court that it intended to oppose the Plaintiffs' application on page 4 of MetLife's Conditional Application Regarding Administrative Dismissal Under Local Civil Rule 41.1(a), filed last week in a related case, no. 05-cv-5862. Under Local Civil Rule 7.1(c), Defendants would have been given 14 days to respond to Plaintiffs' application, which would have been November 19.

undersigned counsel, Woodcock Washburn, to represent them in this action within the last few days." Koresko App. at 1. That statement is at best misleading and, in any event, is not a valid basis for reactivating a lawsuit which Koresko has deliberately ignored for years.

In fact, Koresko has been represented on the record in this case by two different lawyers from two different law firms, starting long before March 30, 2007, up to and including this very day. Moreover, the Woodcock Washburn firm has been representing Koresko for several years in another ongoing litigation involving the same alleged trade secret which Koresko himself describes as very similar and which Koresko filed several years *after* the instant litigation.

Furthermore, Koresko is himself a lawyer with his own private law firm and a member of the bar of this Court. Indeed, he has represented himself *pro se* in several suits in this Court and elsewhere, including within the last year-and-one-half. If Koresko has not been "actively represented" by counsel, that was by Koresko's deliberate choice.

Koresko filed this suit nearly *seven years ago*. His long periods of inactivity since then make clear that Koresko has just not wanted to prosecute it. It is time for the Court to dismiss it.

1.   **A Brief Procedural History.**

Koresko claims to have invented a business method for using a supposed tax loophole in section 412(i) of the Internal Revenue Code. He calls his scheme "Variable 412(i)." Koresko alleges that defendants CJA and Associates, Inc., Raymond Ankner, and Jeff Bleiweis (together, "CJA") and MetLife previously used Koresko's tax loophole. Koresko began this Variable 412(i) litigation against CJA and Mr. Ankner nearly seven years ago, when on January

24, 2002, he filed a writ of summons in Montgomery County Court of Common Pleas. *See* Docket #1 at ex. A.

Then Koresko did nothing for two years.

After two years, CJA forced Koresko's hand by filing a praecipe for a rule to file a complaint. Koresko finally filed his Complaint on January 23, 2004. Docket #1 at Exs. B-D. The Complaint accused CJA and MetLife of trade secret misappropriation for supposedly using the Variable 412(i) tax loophole. Koresko's Complaint added another individual defendant (Mr. Bleiweis) and MetLife (then Travelers) as defendants. CJA and MetLife promptly removed the case to this Court. Discovery in the trade secret case was characterized by yet more delay by Koresko, which added seven months to the discovery period. *See* Docket #114 (opinion by Judge Hart summarizing the delay and denying Koresko yet another extension). Discovery closed on March 11, 2005.

Then Koresko did nothing for three and one-half years, until this Court issued its Order of [insert date], providing that the case would be dismissed if Koresko did not file an application seeking to maintain it.

All these delays contrast markedly with Koresko's eager and aggressive approach to litigating two newer trade secret cases against Nationwide Life Insurance Company in Ohio, involving the same Variable 412(i) scheme at issue in this case. Koresko originally filed one of those Ohio cases here in the Eastern District of Pennsylvania—more than three years after filing the instant lawsuit—but Judge Robreno transferred it to Ohio. (S.D. Ohio no. 05-cv-604 and S.D. Ohio 06-cv-066 (formerly E.D. Pa. 05-cv-3800)). Koresko has aggressively pursued his cases against Nationwide in Ohio over the last few years. Moreover, his counsel in the Ohio cases are the same law firm, the Woodcock Washburn firm in Philadelphia, who now have

entered their appearances in this case. During the time when Koresko has allegedly not been "actively represented" in the instant litigation, these same Philadelphia lawyers have been very actively representing him in his newer trade secret litigation in Ohio. That litigation has already progressed all the way through discovery.

All the delays in Koresko's litigation against CJA and MetLife add up to nearly seven years since Koresko began this Variable 412(i) litigation in January, 2002. It is apparent that Koresko has not been interested in actually resolving his Variable 412(i) litigation against MetLife and CJA.

### 2. Koresko Has Been Represented by Counsel of Record Throughout the Last 3-1/2 Years of Inactivity in This Case

Koresko's sole basis for his application to the Court is that he has not been "actively represented" by counsel since March 30, 2007. Koresko does not explain what "actively represented" means or how allegedly inactive representation for the last one-and-one-half years justifies the last *three-and-one-half* years of complete inactivity on this case, let alone the last year-and-one-half. However, and in any event, Koresko has had multiple counsel of record in this litigation throughout the last three-and-one-half years, including the last year-and-one-half.

During the last three-and-one-half years, Koresko has had two law firms of record in this case: Powell, Trachtman, Logan, Carrle & Lombardo *and* Koresko & Associates, which is Koresko's own law firm. *See* Docket #128 (Attorney Trachtman's entry of appearance); Docket #89 (Attorney Bonney's entry of appearance).[3] Indeed, Koresko has listed Michael G.

---

[3] The docket mistakenly calls document #89 the entry of Virginia I. Miller, Esq. In fact, Attorney Miller and the firm of Anderson Kill & Olick, who were representing Koresko at that time, merely served Attorney Bonney's entry of appearance, because Attorney Bonney had evidently not registered as an ECF user. *Id.*

13310494. 6                                    4

Trachtman, a name partner at Powell Trachtman, on the certificate of service for Koresko's own instant application.

Joining the Powell Trachtman firm and the Koresko & Associates firm, the attorneys from the Woodcock Washburn firm have recently entered their appearances in this case. Koresko claims that the plaintiffs "have only retained the undersigned counsel, Woodcock Washburn, to represent them in this action within the last few days." Koresko App. at 1. However, that statement is not only besides the point, given the other lawyers already of record for Koresko in this litigation, but also misleading. As explained above, in the Variable 412(i) cases that Koresko is litigating against Nationwide, Koresko has been represented for more than two years by the Woodcock Washburn firm. That fact is particularly important here, where Koresko has represented to this Court that the two cases "both have the misappropriation of trade secrets involve [sic] the same intellectual property that we're looking at."[4] Ex. A. at 9.

There is no legitimate reason why Koresko has failed to pursue this litigation. The Court should administratively dismiss this case.

### 3. <u>**Conclusion**</u>

For the reasons stated above, the Court should reconsider its November 12 Order and dismiss this case.

---

[4] In an attempt to avoid transfer of the Nationwide case to Ohio, Koresko's attorney also misrepresented to Judge Robreno that Judge Kauffman had made sealed rulings on "certain things involving the intellectual property." *Id.* at 12.

                                  Respectfully submitted,

Dated:  November 13, 2008            <u>s/ *Robert W. Ashbrook Jr.*</u>
                                         Diane Siegel Danoff
                                         Robert W. Ashbrook, Jr.
                                         Dechert LLP
                                         Cira Centre, 2929 Arch Street
                                         Philadelphia, PA  19104-2808
                                         telephone 215.994.4000
                                         facsimile 215.994.2222
                                         *Attorneys for Defendant MetLife Insurance*
                                         *Company of Connecticut*

# Exhibit A

13310494.5

```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                           - - -

JOHN J. KORESKO, V         :   CIVIL ACTION NO. 05-03800-ER
                           :
          v.               :   Philadelphia, Pennsylvania
                           :   November 28, 2005
NATIONWIDE LIFE INSURANCE  :   4:36 o'clock p.m.
. . . . . . . . . . . . . . .

                         HEARING
         BEFORE THE HONORABLE EDUARDO C. ROBRENO
             UNITED STATES DISTRICT COURT JUDGE

                           - - -

APPEARANCES:

For the Plaintiff:    VIRGINIA I. MILLER, ESQUIRE
                      WILLIAM PILLSBURY, ESQUIRE
                      Anderson Kill & Olick, P.C.
                      1600 Market Street, Suite 2500
                      Philadelphia, PA  19103

For the Defendant:    J. KEVIN FEE, ESQUIRE
                      Morgan Lewis & Bockius, L.L.P.
                      1701 Market Street
                      Philadelphia, PA  19103-2921

                           - - -

Audio Operator:       Joseph Matkowski

Transcribed by:       Jo-Anne L. Hutt

(Proceedings recorded by For The Record Gold digital sound
recording; transcript provided by AAERT-certified
transcribers.)

                           - - -
```



**Laws Transcription Service**
48 W. La Crosse Avenue
Lansdowne, PA 19050
(610) 623-4178

```
 1              (The following occurred in open court at 4:36 o'clock
 2   p.m. as follows:)
 3              THE COURT:  Okay.  Let's see.  For Mr. Koresko,
 4   appearances of counsel.
 5              MS. MILLER:  Virginia Miller from Anderson Kill for
 6   the Koresko parties.
 7              THE COURT:  Okay.  Mr. Pillsbury?
 8              MR. PILLSBURY:  Yes, William Pillsbury for the
 9   Koresko parties.
10              THE COURT:  Now, let's see.  Defendant Nationwide?
11              MR. FEE:  Kevin Fee from Morgan Lewis for Nationwide.
12              THE COURT:  Okay.
13              MR. FEE:  I'm joined by Debbie Mikkelsen also from
14   Morgan Lewis.
15              THE COURT:  Okay.  Let's proceed.  Please be seated.
16              The latest information in this case is that on
17   November 8th, certain defendants, who are currently before
18   Judge Kauffman, filed a declaratory judgment action against
19   Mr. Koresko and Pennmont (ph), and curiously enough, marked
20   it as related to this case, and not to Judge Kauffman's case.
21              Now, I guess there's nobody here for those folks; is
22   that right?  But anybody ready to speak on that matter?
23              MS. MILLER:  Your Honor, I do believe that the
24   Travelers' counsel is present in the courtroom.
25              THE COURT:  Okay.  Why doesn't Travelers -- why don't
```

```
 1   you come in?  Anybody here from Travelers?
 2          Okay.  That's not technically here today, but it
 3   strikes me as a matter that should go before Judge Kauffman
 4   forthwith, before he tries the case that is about ready to go
 5   to trial.  You're going to miss the train.
 6          So what's the story here?  If I may hear counsel,
 7   would you identify yourself, and tell me why that case is
 8   related to this case --
 9          MR. ASTRO:  Your Honor --
10          THE COURT:  -- and not related to the case before
11   Judge Kauffman?
12          MR. ASTRO:  Your Honor, I'm Robert Astro for
13   Travelers, in the related case.  In that case, in the civil
14   cover sheet, it was marked as related both to this case --
15          THE COURT:  Okay.
16          MR. ASTRO:  -- and to Judge Kauffman's case.  The
17   clerk chose to assign it to this case.
18          THE COURT:  Okay.  It must have been because they
19   think I'm more capable; is that right?
20          (Laughter.)
21          MR. ASTRO:  I --
22          THE COURT:  I did not realize that.  In other words,
23   you just disclosed that it was related to both, and somehow
24   administratively ended up here.
25          MR. ASTRO:  That's correct, your Honor.
```

1  this matter with him, but I suppose that if he objected to
2  it, then it wouldn't be transferred to him. But subject to
3  his non-objection, I guess that's the first issue that I want
4  to take up is: Are these related cases?
5     Now, as I understand it, there are two things that I
6  want to get clear. No. 1, my understanding of the case
7  before Judge Kauffman is that the discovery has been
8  completed, that the magistrate judge recently disposed of
9  some motions dealing with reopening a discovery door of some
10 sort, and some pending depositions, but that that case is
11 well along on its way. That's my factual understanding. No.
12 2, that it involves separate defendants, whom allege
13 committed certain conduct, but at different times, under
14 different circumstances, even though they might have had the
15 same end result, but that there are different causes of
16 action. Not different causes of action, but that the
17 circumstances under which the actions were taken were
18 different. They didn't happen at the same time, in the same
19 manner.
20    So given the fact that one case is well along, almost
21 on the eve of trial, and the other one is just beginning, and
22 given the fact that we have separate defendants, and given
23 the fact that the circumstances surrounding both cases are
24 different, what is -- what kind of -- and given the fact that
25 the plaintiff filed different actions to begin with in the

```
 1  State Court, what is the judicial economy that is going to be
 2  achieved in this case?
 3          MS. MILLER:  Your Honor, you are correct in the first
 4  question you were asking whether discovery is complete.
 5  Discovery is complete in the CJA1 action.
 6          THE COURT:  Right.
 7          MS. MILLER:  And you're asking the question, How are
 8  these related and how will we have judicial economy?  There
 9  are sets that are covered by both of the --
10          THE COURT:  Sets?
11          MS. MILLER:  There are circumstances similar --
12          THE COURT:  Okay.
13          MS. MILLER:  -- to this action, the Nationwide
14  action, and the CJA1 action.  Both of them involve
15  misappropriation of trade secrets, and they both have the
16  misappropriation of trade secrets involve the same
17  intellectual property that we're looking at.
18          THE COURT:  Right, but didn't they occur at different
19  times?
20          MS. MILLER:  It did occur --
21          THE COURT:  And different ways, different meetings,
22  different things were said?  It is possible that a
23  misappropriation occurred in one case, and not in the other.
24  Isn't that an entirely plausible outcome, that some folks
25  were pleased and others were not?
```

Case 2:04-cv-00769-JS   Document 136   Filed 11/13/08   Page 16 of 19

10

1  MS. MILLER: That is correct, your Honor, but the
2  judicial economy will occur as set forth in the FMC case,
3  that the Court talked about the same intellectual property
4  being at the heart of the disputes. In that case, where they
5  even had the different defendants, where things occurred in
6  different time periods.
7  That's the same case here. You're looking at a very
8  complex set of intellectual property. You're looking at an
9  invention that involves 412I, which is the Internal Revenue
10 Code, involved in a defined benefit plan, which is involving
11 ERISA.
12 THE COURT: Yes, but as I understand, the question
13 is, let's, for a moment, forget whether or not the -- this is
14 a valid -- a valid intellectual property. The question is:
15 Wasn't some agreement to treat it in a certain way and did
16 that happen?
17 I mean, that's what's involved in this case. There
18 was an agreement to do certain things, and either happened or
19 it didn't happen.
20 MS. MILLER: Your Honor, I think you're getting at
21 the -- in this case, the CJA1 case, in the Nationwide case,
22 both involved the same presentation --
23 THE COURT: Yes.
24 MS. MILLER: -- involving the same Power Point
25 presentation that was given --

                                                                    11

1           THE COURT:  Right.
2           MS. MILLER:  -- including that same -- if you look at
3  the attachments to both of the complaints, this complaint and
4  the CJA1 complaint, you'll see the first two slides of the
5  Power Point presentation that was given.  And that was the
6  starting of the sharing of the intellectual property, i.e.,
7  the trade secrets in that case.
8           So you do have the similarity, even though they did
9  occur at different -- to different parties, that the Power
10 Point presentation was identical.
11          THE COURT:  Well, but how is judicial economy going
12 to be achieved here?  Do you suggest that they stop until you
13 catch up, or how is this going to happen?
14          MS. MILLER:  No, your Honor, but I will say that the
15 court in the CJA1 case is already familiar with the
16 intellectual property that's at the heart of both of these
17 disputes.  And I think that is where you're going to get your
18 judicial economy.  They're already familiar -- Judge Hart is
19 familiar with the trade secrets, the --
20          THE COURT:  Well, he's a magistrate judge.  He's not
21 going to try the case.
22          MS. MILLER:  Well, yes, but he will also have --
23          THE COURT:  We can have him in this case, too.  I
24 mean, I don't know what -- Judge Kauffman issued an opinion
25 in the motion to dismiss, which was, I mean, is not a fairly

1  straightforward ruling.  What else has he got?
2       MS. MILLER:  He's also been involved in various
3  discovery disputes.
4       THE COURT:  Right.
5       MS. MILLER:  If you look at the --
6       THE COURT:  Though Judge Hart.
7       MS. MILLER:  -- docket in this case, there are over
8  120 docket entries, where both Judge Kauffman and Judge Hart
9  have ruled on the -- certain things involving the
10 intellectual property.  Certain of those rulings are sealed.
11 There was a confidential stipulated protective order entered
12 in the CJA1 case.
13      THE COURT: Well, were these presentations made at
14 different times and to different people?
15      MS. MILLER:  Yes, they were made at different times
16 to different people.
17      THE COURT:  Okay.
18      Okay.  What's the argument here?
19      MR. FEE:  Well, I think you've hit the nail --
20      THE COURT:  Yes.
21      MR. FEE:  -- on the head there with saying it
22 involves different people at different times with different
23 obligations that are doing different things that allegedly
24 violate Mr. Koresko's trademark rights.
25      And, you know, one of the questions I think you also

## CERTIFICATE OF SERVICE

I certify that today that in

*Koresko et al. v. Bleiweis et al.*, E.D. Pa. 04-cv-769

hat the following documents have been filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing (ECF) system:

    Defendant MetLife's Motion for Reconsideration of Order Granting Plaintiffs' Local Rule 41(a) Application, with Exhibit A

    [Proposed] Order

    Defendant MetLife's Opposition to Plaintiffs' Application Under Local Civil Rule 41.1(a) and Brief Supporting its Motion to Reconsider

and that service on the following parties was accomplished by the electronic service of a Notice of Electronic Case Filing to the following parties, who have consented to electronic service:

| | |
|---|---|
| CJA & Associates, Inc., Raymond G. Ankner, and Jeffrey I. Bleiweis | John J. Koresko, V |
| c/o Craig R. Tractenberg, Esq.<br>Nixon Peabody LLP<br>ctractenberg@nixonpeabody.com | c/o Henrik D. Parker, Esq.<br>Woodcock Washburn, LLP<br>parker@woodcock.com |
| c/o Reneé F. Bergmann, Esq.<br>Nixon Peabody LLP<br>rbergmann@nixonpeabody.com | c/o Michael G. Tractman<br>Powell, Trachtman, Logan, Carrle & Lombardo, PC<br>mtractman@powelltractman.com |

Dated: November 13, 2008        *s/ Robert W. Ashbrook Jr.*
                                           Robert W. Ashbrook, Jr

13310494.6