# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John J. Koresko, V and<br>PennMont Benefit Services, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Jeff Bleiweis,<br>Raymond Ankner,<br>CJA and Associates, Inc., and<br>MetLife Insurance Company of Connecticut,<br><br>Defendants. | Civil Action No. 04-cv-769 |

## [PROPOSED] ORDER

AND NOW, this _____ day of _____, 2009, upon consideration of Plaintiffs' "Renewed Motion to Vacate Order of Dismissal and Application Pursuant to Local Rule of Civil Procedure 41.1(a)," and Defendants' opposition thereto, it is hereby ORDERED that the motion is DENIED. This case remains dismissed with prejudice.

BY THE COURT:

_____
Juan R. Sánchez, J.

13520403

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| John J. Koresko, V and<br>PennMont Benefit Services, Inc.,<br><br>Plaintiffs,<br><br>v.<br><br>Jeff Bleiweis,<br>Raymond Ankner,<br>CJA and Associates, Inc., and<br>MetLife Insurance Company of Connecticut,[1]<br><br>Defendants. | Civil Action No. 04-cv-769 |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' RENEWED MOTION TO VACATE THE COURT'S ORDER DISMISSING THIS ACTION

It is respectfully submitted that this case was correctly dismissed seven months ago. Nothing in the plaintiffs' "Renewed Motion to Vacate Order of Dismissal and Application Pursuant to Local Rule of Civil Procedure 41.1(a)" justifies vacating Judge Kauffman's Order.

This case has dragged on for seven and one-half years, and the plaintiffs frittered away more than six of those years doing nothing substantive on the case. Throughout it all, plaintiffs John J. Koresko, V—who is himself a trial attorney admitted to this Court—and his company, PennMont Benefit Services, Inc., have acted only when the Court has forced them to, and even then they have done only the bare minimum to stave off dismissal until the next time. Last October, Judge Kauffman finally said "enough!" and put the plaintiffs on notice of the impending dismissal, but even with that warning, the plaintiffs continued to ignore this case.

---

[1] After this case was filed, the name of original defendant The Travelers Life and Annuity Company became MetLife Insurance Company of Connecticut. This brief refers to this defendant as "MetLife" throughout.

1

13520403

Meanwhile, the defendants have been prejudiced by the plaintiffs' inaction, as witnesses have died or left the employ of the defendant companies, and memories of all the parties' witnesses have undoubtedly faded.

The plaintiffs' Renewed Motion is primarily a series of tales of woe about how their various lawyers each failed to prosecute this case for one reason or another. The plaintiffs' excuses are inaccurate (at best). But even if their excuses were true, none would justify the plaintiffs' failure over all these years to find other litigation counsel who would actually work on the case. Indeed, Mr. Koresko is an experienced litigator himself who knows the rules, but has ignored this case anyway.

Even now, the plaintiffs have no viable plan to proceed. The Court should not enable them to manipulate the process any longer. The Court should not reverse Judge Kauffman's dismissal.

## I.  **PROCEDURAL HISTORY**

Because this case was recently reassigned, the Court may benefit from a brief review of the relevant procedural history:

Jan. 24, 2002:  The plaintiffs began this litigation by filing a praecipe for a writ of summons in Montgomery County Court of Common Pleas. *See* Docket #1 (Notice of Removal) at Ex. A. Counsel of record were Anderson Kill & Olick and Mr. Koresko himself. *Id.*

Jan. 23, 2004:  The plaintiffs were forced to file a complaint after Defendant CJA and Associates obtained a Rule to File a Complaint. *See* Docket #1 at Exs. B-D. Plaintiffs were again represented by Anderson Kill & Olick and also by another lawyer at Mr. Koresko's law firm, Jeanne Bonney, Esq. *Id.*

Feb. 23, 2004:  The defendants removed this case to this Court. *See* Docket #1.

May 13, 2004:  The parties submitted an agreed discovery plan setting the close of party discovery by August 18, 2004. *See* Docket #14. The next month, the plaintiffs sought to delay discovery by 60 days. *See* Docket #29. The Court granted the

13520403

extension over the defendants' opposition and set the close of party discovery for October 18, 2004. *See* Docket #43.

Aug. 10, 2004: The plaintiffs filed an amended complaint. They were again represented by Anderson Kill & Olick and by Jeanne Bonney from Mr. Koresko's law firm. (Ms. Bonney filed another entry of appearance on Feb. 22, 2005, which was mis-docketed as an entry by Virginia Miller.) The defendants have never filed any counterclaims.

Oct. 26, 2004: "More than a week after that deadline expired, Plaintiffs filed [a] motion requesting an additional 90 day extension." Memorandum and Order (Docket #88) at 1. In ruling on the plaintiffs' motion, "The Court [found] that *Plaintiffs are primarily responsible for the lack of progress in discovery.* However, the Court [was] also mindful of the effect that denying further discovery would have on Plaintiffs' case. . . . Thus, in the interest of justice, the Court grant[ed] Plaintiffs an additional 30 days in which to conduct oral depositions." *Id.* at 5 (emphasis added).

Mar. 09, 2005: Following the plaintiffs' motion for reconsideration of the extension given them, *see* Docket #90, the Court granted the plaintiffs yet *another* extension so they could depose one of the individual defendants.

**Mar. 21, 2005: Discovery closed. *Nothing substantive has occurred since then.***

Nov. 22, 2005: One of the plaintiffs' attorneys, Virginia Miller from Anderson Kill & Olick, wrote the Court to explain that although she was leaving the country, "*my firm is prepared to continue with this matter with no delays or extensions.* As such, three [additional] attorneys from my firm are making an appearance in this matter . . . and will serve as counsel, including trial counsel, if necessary, during my absence." *See* Ex. A (emphasis added); Docket ## 125-27. Those appearances brought to seven the number of lawyers from Anderson Kill & Olick and from Mr. Koresko's law firm who were then representing plaintiffs.

Aug. 14, 2006: The Anderson Kill attorneys withdrew their appearances for the plaintiffs, and two attorneys from Powell Trachtman Logan Carrle Bowman & Lombardo entered theirs: name partner Michael Trachtman and associate Gregory Starr. *See* Docket ## 128-29.

Mar. 30, 2007: Gregory Star withdrew his appearance for the plaintiffs. *See* Docket #130.

Oct. 08, 2008: The Court gave the plaintiffs notice that it intended to dismiss this case for non-prosecution. *See* Docket #131.

Nov. 05, 2008: Two attorneys from Woodcock Washburn entered their appearances for the plaintiffs and applied to keep the case open. *See* Docket ## 132-34.

Nov. 13, 2008: Before the Defendants could be heard in opposition, the Court granted the plaintiffs' application to keep the case open and ordered the parties to prepare a

13520403

new discovery schedule for the litigation. *See* Docket #135. Later that day, Defendant MetLife moved for reconsideration. *See* Docket #136. (The plaintiffs never proposed a plan or schedule, nor even contacted the defendants.)

Nov. 18, 2008: The Woodcock attorneys withdrew their appearances for the plaintiffs. *See* Docket ## 138-39.

Nov. 20, 2008: Attorney Trachtman withdrew his appearance for the plaintiffs. *See* Docket #141.

Dec. 18, 2008: The Court issued a "show cause" Order why the case should not be dismissed. *See* Docket #142. Neither the plaintiffs nor their remaining counsel of record, Jeanne Bonney from Mr. Koresko's law firm, responded.

Jan. 06, 2009: The Court dismissed this case, with prejudice. *See* Docket #143.

Feb. 20, 2009: The plaintiffs moved to vacate the dismissal. *See* Docket #144. MetLife opposed the motion. *See* Docket #145.

Jul. 17, 2009: The Court denied the plaintiffs' motion to vacate the dismissal, *see* Docket #146, after which the plaintiffs filed the instant motion, *see* Docket #147.

## II. ARGUMENT

Although this case is over seven and one-half years old, it was active for less than 14 months: from the day that the defendants forced the plaintiffs to finally file a complaint (January 23, 2004) until the end of discovery (March 21, 2005). During the remainder of that time—more than six years (including the first two years after the suit was filed, and the last four years and five months, and running)—the plaintiffs have done nothing except add different lawyers and ask the Court to keep their lawsuit alive. The plaintiffs have no legitimate excuse for their inaction, and it would be unfair to the defendants to reverse the Court's dismissal.

The plaintiffs' inaction does not itself run afoul of the statute of limitations, but it is notable that the period of inactivity *after the close of discovery* has been more than double the longest (two year[2]) limitations period for any of the torts alleged. The same policy reasons that

---

[2] *See Bealer v. Mut. Fire, Marine & Inland Ins. Co.*, 242 Fed. Appx. 802, 805 (3d Cir. 2007) ("[U]nder Pennsylvania law, the statute of limitations for a claim of intentional

4

13520403

underlie those pre-filing limitations—witnesses becoming unavailable, memories fading, and not subjecting defendants (including the individual defendants) to perpetually unresolved claims— make it inequitable for the plaintiffs to be allowed to proceed with this case after having failed to prosecute it for more than four years since the close of discovery back in March, 2005.

### A. None of the Plaintiffs' Excuses Justify Their Ignoring this Case.

In their motion, the plaintiffs offer a boatload of excuses for why they have not prosecuted this case. The plaintiffs say the inactivity is not their fault, and they would instead shift responsibility to their lawyers. But it is respectfully submitted that the inactivity *is* the plaintiffs' fault and that they have been given more than enough second chances. The plaintiffs' tales of woe do not justify the Court's vacating the dismissal which it entered in January.

#### 1. Attorney Miller's Absence Cannot Justify the Plaintiffs' Failure to Prosecute This Case.

The plaintiffs' leading excuse for why they have not prosecuted this case is that one of their former lawyers, an associate at Anderson Kill & Olick named Virginia Miller, "was out the country [for] nearly three years, accounting for much of the period of dormancy noted by the [C]ourt in this case." Renewed Motion ¶8. This argument is disingenuous for many reasons.

Although the plaintiffs blame *three years* of delay on Ms. Miller's absence, the fact is that she and her firm were representing the plaintiffs for, at most, only about eight months

---

interference with a contract is two years."); *Harry Miller Corp. v. Mancuso Chems. Ltd.*, 469 F. Supp. 2d 303, 312 (E.D. Pa. 2007) ("The statute of limitations for misappropriation of a trade secret in Pennsylvania [predating the Penna. Uniform Trade Secrets Act] is two years."); *M&M Stone Co. v. Pa.*, no. 07-cv-4785, 2008 U.S. Dist. LEXIS 76050, at *12 ("[P]laintiff's [Pennsylvania] state-law claim for commercial disparagement is governed by a one-year statute of limitations."); *Callahan v. A.E.V.*, 182 F.3d 237 (3d. Cir. 1999) ("Claims for common-law . . . conspiracy are governed by a two-year statute of limitations [under Pennsylvania law].").

5

of that time.³ Moreover, Ms. Miller herself told the Court before her departure that her colleagues would handle all aspects of the case, including trial, during her absence:

> *[M]y firm is prepared to continue with this matter with no delays or extensions.* As such, three attorneys from my firm are making an appearance in this matter (copies of their entries of appearance are enclosed) and will serve as counsel, including trial counsel, if necessary, during my absence.

Ex. A (emphasis added).

The plaintiffs never relied solely on Ms. Miller to prosecute this case, anyway. When the case began, Ms. Miller was counsel of record with a more senior Anderson Kill attorney, Timothy P. Law, as well as Attorney Koresko's own law firm. *See* Docket #1 at Exs. A, D, & E. Other Anderson Kill attorneys subsequently entered appearances for the plaintiffs, including Pamela Hans, Jocelyn Gabrynowicz, William Pillsbury, Robert Frankel, and Mark Gottlieb. *See* Docket ## 6, 115, 125-27. The managing partner of Anderson Kill's Philadelphia office was also familiar with this case. *See* Docket #144 ¶6. Furthermore, Attorney Jeanne Bonney of Attorney Koresko's own law firm has been of record for plaintiffs in this case ever since its first pleading. *See e.g.* Docket #1 Ex. D; Docket #44.

Finally, Ms. Miller's leaving the country does nothing to explain why the plaintiffs did not prosecute their case while Ms. Miller was *here*, either before Ms. Miller left the country, after she returned, or after she withdrew her appearance.

---

³ Ms. Miller left the country on December 7, 2005, *see* Ex. A, but she (along with the other five Anderson Kill attorneys representing the plaintiffs) withdrew their appearances on August 14, 2006, the day that the Powell Trachtman firm took over the case. *See* Docket ## 128-29. Thus, even if the Anderson Kill firm could not have prosecuted this case without Ms. Miller, her absence could not have delayed the case by more than about eight months (and even that figure is probably exaggerated, because she evidently returned to the country after only four months. *See* Ex. A.).

13520403

## 2. Plaintiffs Cannot Shift the Blame to Anderson Kill & Olick.

The plaintiffs do not just blame Ms. Miller; they also blame the entire Anderson Kill & Olick firm, including her firm's "reticence to continue in zealous representation." Renewed Motion ¶10-11. The crux of this argument seems to be that the Anderson Kill firm "either did nothing or decided that it did not have to do anything on Plaintiffs' affairs while Ms. Miller was away," because Mr. Koresko and Ms. Miller were co-defendants in some another (unnamed) litigation. Renewed Motion ¶¶10-11. This is a disingenuous and irrelevant argument.

First, the plaintiffs' story is internally inconsistent.[4] It cannot be that plaintiffs would have prosecuted this matter had Ms. Miller been in the country, yet she and her firm would *not* prosecute this case because of their joint defense arrangement with Mr. Koresko.

Second, even were this story true, it can account for only about eight months of delay, as explained above. The plaintiffs' story does not account for why they failed to prosecute this case either before Ms. Miller left the country in December, 2005, nor after the Anderson Kill firm withdrew from the case in August, 2006.

## 3. "I've Been Too Busy" Is Not a Valid Excuse.

The plaintiffs' next excuse is that Mr. Koresko was so busy with the (unnamed) litigation that it was "literally impossible" for him to pursue this litigation. *See* Renewed Motion ¶9 ("A majority of Plaintiff's time in the past several years was devoted to representing his affiliates in that other case, until less than one year ago when an insurance carrier finally agreed to provide representation. It was literally impossible for Plaintiff to proceed to trial in this

---

[4] We note also that the plaintiffs never offered this excuse in their *first* motion to vacate the Court's dismissal. *See* Docket #144 ¶7 (outlining the plaintiffs other excuses but failing to mention this one).

13520403

litigation while the other case was pending."). It is respectfully submitted that there are three fatal problems with this argument.

First, this excuse does not explain why Mr. Koresko did not prosecute this case during the past year. By his own admission, Mr. Koresko had counsel provided by an insurance carrier in the (unnamed) litigation. This Court warned the plaintiffs back in October 2008 that their case was about to be dismissed for non-prosecution, *see* Docket #131, and the next month the Court ordered the parties to prepare a new discovery plan and schedule. *See* Docket #135. Inexcusably, the plaintiffs did nothing.

Second, a plaintiff's being too busy is no excuse under Local Civil Rule 41.1(a). Mr. Koresko is not some typical *pro se* plaintiff who might be unfamiliar with litigation—he is *an Officer of this Court*. He knows that a plaintiff has obligations: to follow the rules; to monitor the docket, to comply with deadlines, and to obey the Court's Orders. If these plaintiffs were *truly* too busy to fulfill their obligations throughout all "the past several years," they could have hired counsel to prosecute this case, or to defend the (unnamed) litigation. After all, the plaintiffs admit they are "capable of paying fees and expenses necessary to bring the matter to a conclusion, after trial if necessary." Renewed Motion ¶30.

Third, and most importantly, it is untrue that it was "literally impossible" for plaintiffs to proceed because they were too busy with the (unnamed) litigation. To the contrary, the plaintiffs in this case have initiated numerous other litigations as plaintiffs during this period, and they offer no explanation why they pursued all these *other* cases instead of this one. Since the close of discovery in this case, in the Montgomery County Court of Common Pleas alone, either or both of the plaintiffs have found time to sue all of the following defendants:

- Roberto G. Truax of El Paso, Texas, et. al. (no. 04-15675, filed June 9, 2004);

- Barry J. Haskell of Huntingdon, New York, et al. (no. 04-16218, filed June 16, 2004);

- Dorothy P. Elkner, Inc. of Palm City, Florida, et al. (no. 04-20446, filed July 15, 2004);

- Conrad Nadeau of Worcester, Massachusetts, et al. (no. 04-20447, filed July 15, 2004);

- Thomas Crosswhite of Lake Oswego, Oregon, et al. (no. 05-13551, filed May 12, 2005);

- AmeriGas of King of Prussia, Pennsylvania (no. 05-16576, filed June 17, 2005),

- Nationwide Life Insurance Co. (no. 05-16899, filed June 23, 2005);

- American International Group, Inc., American General Corp., et al. (no. 05-19645, filed July 29, 2005);

- J. Bryan Ray of Baton Rouge, Louisiana, et al. (no. 05-23594, filed September 26, 2005);

- Dales Estes of Sidney, Ohio, et al. (no. 05-24019, filed October 3, 2005);

- Ed Murphy of Pelham, Alabama, et al. (no. 05-24804, filed October 14, 2005);

- Martin Schlossberg of Farmingdale, New York, et al. (no. 05-25581, filed October 25, 2005);

- Jerry Bryan Ray of Opelika, Alabama, et al. (no. 06-00403, filed January 10, 2006);

- Pauline T. Sanders of Anderson, South Carolina, et al. (no. 06-12979, filed May 24, 2006);

- Capitas Financial, LLC of Minneapolis, Minnesota, et al. (no. 06-22396, filed September 1, 2006);

- McGlinchey Stafford PLLC of Baton Rouge, Louisiana (no. 08-13829, filed May 22, 2008);

- Lyle J. Micheli M.D., P.C. of Boston, Massachusetts, et. al. (no. 08-15524, filed June 9, 2008);

- ACT Management Co., Inc. of Lynn, Massachusetts, et al. (no. 08-15526, filed June 9, 2008);

- Kenneth Fowler Drywall, Inc. of Duncan, South Carolina, et al. (no. 08-19656, filed July 15, 2008);

- Jay Steer of Virginia Beach, Virginia, et al. (no. 08-25501, filed September 10, 2008);

- Emergency Medicine Resources, Inc. of El Paso, Texas, et al. (no. 08-33105, filed November 11, 2008);

- Wuest Estate Company, Inc. of San Diego, California, et al. (no. 09-01407, filed January 21, 2009); and

- John Sharratt Associates, Inc. of Boston, Massachusetts, et al. (no. 09-09970, filed April 8, 2009).

In each of these suits, either Mr. Koresko, or PennMont, or both, was one of the plaintiffs.

Moreover, either Mr. Koresko or his law firm was counsel for the plaintiffs in each of these suits.

13520403

The plaintiffs have also found time to sue people in *this Court* during the same period. Not counting cases removed from Montgomery County, here they have sued the following defendants:

- Tobacco Road Associates LP, of Landisville, Pennsylvania, et al.
  (no. 06-cv-2637, filed June 19, 2006)
  (no. 06-cv-2640, filed June 19, 2006),
  (no. 06-cv-3299, filed July 26, 2006),
  (no. 06-cv-3318, filed July 27, 2006), and
  (no. 06-cv-3322, filed July 27, 2006); and

- Secretary of Labor Hilda Solis, et al.
  (no. 09-cv-3152, filed July 16, 2009).

Once again, in every one of these suits, Mr. Koresko is personally a plaintiff, and he is representing himself. It strains credulity to believe that Mr. Koresko had time to litigate the (unnamed) case, and to act as a plaintiff and lawyer in all these other litigations, yet did not have time to pursue the instant litigation after the close of discovery.

Among all these other cases brought by the plaintiffs on their own behalf, two are particularly notable. First, in *PennMont Benefit Services, Inc. v. Internal Revenue Service*, D.D.C. no. 07-cv-67 (filed Jan. 12, 2007), the plaintiffs sued the IRS to obtain, among other things, evidence for *this case* under the Freedom of Information Act. It is hard to imagine how it could have been "literally impossible" for the plaintiffs to pursue this case in this Court, when at the same time they were able to pursue a new federal case to obtain evidence for this case.

The second is *Koresko v. Nationwide Life Insurance Co.*, Montgomery Co. C.C.P. no 05-16899, *removed as* E.D. Pa. no. 05-cv-3800; *transferred as* S.D. Ohio no. 06-cv-66.[5] The

---

[5] The Renewed Motion contains a vague allegation that MetLife, Nationwide, and American General wanted to "impose extraordinary financial and personal stress on Plaintiff" by suing Mr. Koresko for declaratory judgments of non-infringement of a patent. Renewed Motion ¶14. To the contrary, MetLife sought a declaratory judgment only after Mr. Koresko (1) made allegations of infringement in this case and then (2) threatened to sue MetLife for patent infringement. With respect to the other insurance

*Nationwide* case is another trade secret case which the plaintiffs filed three months after discovery closed in this case. In contrast to this case, however, the plaintiffs have prosecuted their case against Nationwide very aggressively. Back in October 2006 (while the plaintiffs were allegedly too busy to pursue this litigation against MetLife), the plaintiffs hired intellectual property boutique Woodcock Washburn of Philadelphia to represent them in the *Nationwide* case. Although that case is currently stayed pending an appeal of a dispositive issue to the Supreme Court in an unrelated case, the plaintiffs have pursued the *Nationwide* case with particular vigor during much of the period of inactivity in this lawsuit.

Even though this case was filed almost three and one-half years before the *Nationwide* case, the plaintiffs treated this case very differently. Instead of hiring the Woodcock firm to pursue this case years ago, they waited to do so until after Judge Kauffman put them on notice that he intended to dismiss this case for non-prosecution in October 2008. *See* Docket ## 132, 133, 137, 138. Based on the plaintiffs' representation that they would have counsel, the Court declined to dismiss this case in November 2008. *See* Docket #135. However, only five days later, the Woodcock firm suddenly withdrew its appearance. *See* Docket ## 138, 139. That sudden withdrawal prompted Judge Kauffman to order the plaintiffs to "show cause why this action should not be dismissed . . . with prejudice" within ten days. *See* Docket #142. Seven months ago, when the plaintiffs had failed to comply with the Court's Order (or to even monitor the docket), the Court dismissed this case with prejudice. *See* Docket #143.

---

        companies, Mr. Koresko had already sued them on essentially the same subject matter
        before they, too, sought declaratory judgments of non-infringment. *See Koresko v.*
        *Nationwide Life Ins. Co.*, Montgomery Co. C.C.P. no 05-16899 (filed June 23, 2005);
        *Koresko v. American General Corp.*, Montgomery Co. C.C.P. no. 05-19645 (filed July
        29, 2005).

13520403

The plaintiffs have had ample time to initiate and pursue many other lawsuits over the years while ignoring this one. It was not "literally impossible" for them to litigate this case.

### 4. The Move by Certain Lawyers to Reed Smith Is Irrelevant.

The plaintiffs have previously told this Court that the departure of several Anderson Kill attorneys to Reed Smith, including one named John Ellison, was to blame for their failure to pursue this case. *See* Docket #144. MetLife has previously shown, in detail, how the plaintiffs' contentions are a complete fabrication, because the Reed Smith departure did not occur until *a year and a half after* Anderson Kill stopped representing the plaintiffs in this case. *See* Docket #145 at 3-4 & Exs. 2-3. Moreover, John Ellison never entered an appearance for the plaintiffs, and the lawyers who *did* appear were not the lawyers who went to Reed Smith. *Id.* The Court has rejected this frivolous argument in the past and should do so again.

### 5. The Plaintiffs Cannot Blame Michael Trachtman or Gregory Star for Their Problems.

The plaintiffs' final unfounded excuse concerns two more of his former attorneys, Michael Trachtman and Gregory Star. In addition to being Mr. Koresko's "old friend," Mr. Trachtman is a partner in the firm of Powell Trachtman Logan Carrle Bowman & Lombardo who entered his appearance along with his associate Gregory Star on August 14, 2006 (when the Anderson Kill attorneys withdrew theirs). *See* Docket #129. During the seven and one-half months before Mr. Star withdrew his appearance on March 30, 2007, *see* Docket #130t, neither Mr. Star nor Mr. Trachtman ever contacted the defendants nor the Court about pursuing this case. The plaintiffs do not even try to explain this period of inactivity, which stands in stark contrast to the similar Nationwide litigation in Ohio, in which Mr. Star filed several motions for the plaintiffs during the same period.

13520403

When Mr. Star withdrew, why didn't Mr. Trachtman take up the case himself, or assign it to another associate? Here is the plaintiffs' only explanation: "other economic issues relating to his firm, and the delegation of his responsibility for the file to Mr. Star, rendered him unwilling or unable to continue service in this case." Renewed Motion ¶17. In fact, after Mr. Star's departure, Attorney Trachtman *did* "continue service" in this case until November 20, 2008. *See* Docket #141. However, the plaintiffs have not shown cause why Mr. Trachtman (nor anyone else) prosecuted this case during this additional period of a year and eight months.

Moreover, if Mr. Trachtman was genuinely "unwilling or unable" to prosecute this case without his associate Mr. Star, then why didn't the plaintiffs obtain new counsel as soon as Gregory Star withdrew? Once again, the plaintiffs have no explanation for the Court.

B. **The Defendants Have Been Prejudiced by More than Six Years of the Plaintiffs' Inactivity.**

The plaintiffs' delays have prejudiced the defendants in several ways. Important witnesses have left MetLife, including one mentioned by the plaintiffs, *see* Renewed Motion ¶27, and other important witnesses who have left the company even *since* this case was finally dismissed in January, 2009. These witnesses are now outside of the defendants' employ and believed to be outside the subpoena power of this Court. Another of the defendants' witnesses died in a tragic airplane crash after the close of discovery. *See* Docket #124. Moreover, the passage of time is likely to have faded the memories of witnesses for all the parties.

C. **Even Now, the Plaintiffs Have Set Forth No Viable Plan to Proceed.**

The plaintiffs have no viable plan to proceed with this litigation. Because Judge Kauffman specifically required them to show "how Plaintiffs intend to proceed with or without counsel," Docket #146 at n.1, their Renewed Motion should be denied for this reason alone.

13

First, the plaintiffs say they "sought the representation of Ms. Ellen Brotman, a partner at Montgomery McCracken et al." Renewed Motion ¶ 30. However, they made that claim *six months ago*, see Docket #144 ¶2, and Ms. Brotman has yet to enter her appearance.

Second, the plaintiffs admit that they are prepared to move forward with this case only if an appeal affirms the (unnamed) litigation in which Mr. Koresko is himself a defendant. Renewed Motion ¶9. If that appeal results in a reversal or remand of the (unnamed) case, or perhaps even if there is simply a long delay before the appellate court rules, apparently the plaintiffs would not be willing to move forward until a trial is held in the (unnamed) case. *Id.* The plaintiffs give no indication when that appeal might be heard, or if it results in a reversal, how close the unnamed case is to trial. "[H]opefully [sic] in early 2010" is the only schedule that the plaintiffs can offer the Court in response to Judge Kauffman's Order. *Id.* ¶22.

Third, the plaintiffs claim that "witnesses necessary to Plaintiff's [sic] case are readily available," *id.* ¶27, but the only witness they name, Mark "Teitlebaum" [sic; should be "Teitelbaum"] is a former MetLife employee who was never deposed, left the company during the long stretch of plaintiffs' inactivity on this case, and is believed to live in Hartford, Connecticut, outside the subpoena power of this Court.

Fourth, the plaintiffs state that "[i]n the unlikely event that Plaintiff could not secure outside counsel, Plaintiff has the staff and competency to proceed to trial and would do so." Renewed Motion ¶31. If the plaintiffs mean that Mr. Koresko would act *pro se* on behalf of himself and as the attorney for his co-plaintiff, PennMont (as he did when filing the Renewed Motion), then the plaintiffs' plan does not comport with Pennsylvania Rule of Professional Conduct 3.7, which prohibits an attorney from testifying in a civil case that he is prosecuting as trial counsel. Attorney Koresko is a named plaintiff and central witness in this case.

14

In short, the plaintiffs have no viable plan to proceed.

## III. **CONCLUSION**

The Court warned the plaintiffs *ten months ago* that a dismissal for non-prosecution was imminent. *See* Docket #131. During that period, the plaintiffs have fought the dismissal with applications, motions, and several different sets of lawyers. Still, even after they were put on notice about the Court's intent to dismiss this case, they have never tried to advance the case on its merits. Even today, they have not approached the defendants about a schedule, nor asked the Court for a trial date, nor prepared any of the Court's requested pretrial submissions, nor even retained a lawyer.

It is respectfully submitted that Judge Kauffman correctly dismissed this case. This Court should reject the plaintiffs' Renewed Motion to vacate the dismissal.

Respectfully submitted,

| | |
|---|---|
| s/ *Craig R. Trachtenberg*   Date: *08/11/09* | s/ *Robert W. Ashbrook, Jr.*   Date: *08/11/09* |
| Craig R. Trachtenberg | Diane Siegel Danoff |
| Nixon Peabody LLP | Robert W. Ashbrook, Jr. |
| Two Penn Center | Dechert LLP |
| 1500 JFK Boulevard, Suite 200 | Cira Centre, 2929 Arch Street |
| Philadelphia, PA  19102 | Philadelphia, PA  19104-2808 |
| telephone 212.940.3722 | telephone 215.994.4000 |
| facsimile 866.852.2714 | facsimile 215.994.2222 |
| *Attorneys for Defendants* | *Attorneys for Defendant* |
| *Jeff Bleiweis, Raymond Ankner, and* | *MetLife Insurance Company of Connecticut* |
| *CJA & Associates, Inc.* | |

# Exhibit A

to MetLife's Opposition to Korekso's Renewed Motion to Vacate

Letter from Virginia I. Miller to the Court dated November 22, 2005

13520403

# ANDERSON KILL & OLICK, P.C.

Attorneys and Counselors at Law

1600 MARKET STREET ■ SUITE 2500 ■ PHILADELPHIA, PA 19103
TELEPHONE: 215-568-4202 ■ FAX: 215-568-4573
www.andersonkill.com

Virginia I. Miller, Esq.
vmiller@andersonkill.com
(215) 568-4712

*By Mail*

November 22, 2005

The Honorable Bruce W. Kauffman
United States District Court for the Eastern
District of Pennsylvania
601 Market Street, Room 5613
Philadelphia, PA 19106-1776

Re: Koresko, et al v. Bleiweis, et al (Civ. 04-cv-769)
Client/Matter No. 053946-KRK09

Dear Judge Kauffman:

I am writing to notify you that I will be out of the country for the next four months on a tour of duty with the Air National Guard commencing December 7, 2005. However, my firm is prepared to continue with this matter with no delays or extensions. As such, three attorneys from my firm are making an appearance in this matter (copies of their entries of appearance are enclosed) and will serve as counsel, including trial counsel, if necessary, during my absence.

Sincerely,

Virginia I. Miller

VIM:whp
Enclosures

cc: Honorable Jacob P. Hart        Craig R. Tractenberg
    Renee F. Bergmann              Diane Siegel Danoff
    Robert W. Ashbrook, Jr.        David N. Sontag

New York ■ Chicago ■ Greenwich ■ Newark ■ Philadelphia ■ Washington, D.C.

# CERTIFICATE OF SERVICE

I certify that today that in

*Koresko et al. v. Bleiweis et al.*, E.D. Pa. 04-cv-769

hat the following documents have been filed electronically and is available for viewing and downloading from the Court's Electronic Case Filing (ECF) system:

[Proposed] Order

Defendant MetLife's Opposition to Plaintiffs' Renewed Motion to Vacate

Exhibit A

Certificate of Service

and that service on the following parties was accomplished by the electronic service of a Notice of Electronic Case Filing to the following parties, who have consented to electronic service:

| | |
|---|---|
| CJA & Associates, Inc., Raymond G. Ankner, and Jeffrey I. Bleiweis | John J. Koresko, V, and PennMont Benefit Services, Inc. |
| c/oCraig R. Tractenberg, Esq. Nixon Peabody LLP ctractenberg@nixonpeabody.com | c/o Jeanne D. Bonney, Esq. Koresko & Associates, P.C. jbonney@pennmont.com |

Dated:  08/11/09           *s/ Robert W. Ashbrook, Jr..*
                            Robert W. Ashbrook, Jr.